STATE OF NORTH CAROLINA v. WAVERLY ORLANDO HARSHAW, JR.

No. COA99-547

(Filed 5 July 2000)

## 1. Homicide— first-degree murder—specific intent to kill—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the first-degree murder charge based on the alleged insufficient evidence to establish that defendant formed a specific intent to kill the victim when the victim was shot in the hip, because: (1) conduct and statements of defendant such as threats made against the victim before and after the killing raise inferences of premeditation and deliberation; and (2) defendant made threatening statements about the victim on several occasions prior to the murder.

## 2. Discovery— due process—detonation of percussion grenade—failure to disclose—materiality

Defendant's due process rights were not violated in a first-degree murder case by the prosecutor's failure to disclose evidence that a percussion grenade was set off in defendant's apartment by the police before the criminal investigation began, because: (1) defendant has not addressed how admission of this evidence would have altered the jury's finding of guilt; and (2) the evidence did not arise to the level of materiality which would have created a different result in the proceeding, especially in light of the fact that defendant used any potential effects this evidence could have had to his benefit at the trial.

## 3. Evidence— witness testimony—personal knowledge or personal perception required

Although the trial court erred in a first-degree murder case by permitting a witness to testify that defendant intended to purchase a gun for the purpose of threatening the victim, without a foundation establishing that the witness either had personal knowledge or a personal perception as required by N.C.G.S. § 8C-1, Rule 602, there was plenary other evidence at trial revealing premeditation and deliberation, and there was no reasonable possibility that a different result would have been reached absent this error.

### 4. Criminal Law— prosecutor's argument—intent to kill

The trial court did not abuse its discretion in a first-degree murder case by failing to intervene ex mero motu during the prosecutor's closing argument stating that defendant may say he did not mean to kill the victim because he did not shoot him in the head, but intent to kill is found if defendant intentionally shoots the victim or intentionally inflicts serious bodily harm on him, since: (1) the context of the argument does not reveal that the State intended to make a dispositive explanation of what must be established in order to find specific intent; (2) the jury was told numerous times by the trial court during closing arguments that the jury must take the law as instructed by the trial court; and (3) at the conclusion of the arguments, the trial court gave proper instructions on all aspects of the case, including the requisite intent.

### 5. Criminal Law— prosecutor's argument—lapsus linguae

The trial court did not abuse its discretion in a first-degree murder case by failing to intervene ex mero motu during the prosecutor's closing argument misstating that a witness heard defendant make threats in reference to the victim "a couple of weeks" before the shooting, instead of "several months" before the shooting, because: (1) the prosecutor's misstatement was a mere lapsus linguae; and (2) there is no reasonable probability that a different result would have been reached at trial if the trial court had taken corrective action.

Appeal by defendant from judgment entered 4 August 1998 by Judge W. Robert Bell in Catawba County Superior Court. Heard in the Court of Appeals 23 February 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Jill Ledford Cheek, for the State.*

*Janine C. Fodor for the defendant-appellant.*

LEWIS, Judge.

Defendant was tried at the 20 July 1998 session of Catawba County Superior Court for first-degree murder. The jury returned a verdict of guilty on 29 July 1998. Defendant was sentenced to life imprisonment without parole. Defendant appeals, making four arguments.

STATE v. HARSHAW

[138 N.C. App. 657 (2000)]

The State's evidence tended to show the following. On the morning of 5 December 1996, while Rod Robinson was in defendant's apartment, defendant shot Robinson in the right hip, severing an artery. Though shot in the hip, Robinson was still ambulatory, walked to the residence of defendant's neighbor, Betty Hoover, and told her that "Malik" shot him. The defendant in this case is also known as "Malik." Robinson died as a result of the gunshot wound.

Several witnesses testified Robinson and defendant had been in a conflict in the past which involved money. In July 1996, defendant gave Robinson between $700 and $800 to purchase drugs for him, but Robinson instead kept the money for himself. After this incident, defendant openly expressed ill-will towards Robinson on several occasions. Once, defendant pulled a gun on Robert Whitworth, demanding that Whitworth take him to Robinson. When Whitworth refused, defendant stated, "When you see that [Robinson], you tell that m----f---- I'm going to kill him." (3 Tr. at 950.) Several other witnesses testified defendant threatened to "get" Robinson and "f--- him up" on several occasions. (3 Tr. at 1033, 1076.)

[1] Defendant first contests the trial court's failure to dismiss the charge of first-degree murder due to an insufficiency of evidence to establish defendant formed a specific intent to kill the victim. To withstand defendant's motion to dismiss, the State had to show substantial evidence as to each essential element of the crime. *State v. Workman*, 309 N.C. 594, 598, 308 S.E.2d 264, 267 (1983). For purposes of a motion to dismiss, the trial court must consider all the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981).

First-degree murder is the "unlawful killing of a human being with malice, premeditation and deliberation." *State v. Truesdale*, 340 N.C. 229, 234, 456 S.E.2d 299, 302 (1995). "Premeditation" occurs when the defendant forms the specific intent to kill at some period of time, however short, before the actual killing. *State v. Weathers*, 339 N.C. 441, 451, 451 S.E.2d 266, 271 (1994). "Deliberation" means that defendant formed an intent to kill in a cool state of blood rather than under the influence of a violent passion suddenly aroused by sufficient provocation. *Id.* at 451, 451 S.E.2d at 271-72. "A specific intent to kill is a necessary constituent of the elements of premeditation and deliberation in first degree murder." *State v. McLaughlin*, 286 N.C. 597, 604, 213 S.E.2d 238, 243 (1975), *vacated in part on other grounds*, 428 U.S. 903, 49 L. Ed. 2d 1208 (1976). Premeditation and

deliberation usually are not established by direct evidence, but by circumstantial evidence from which actions and circumstances surrounding the killing may be inferred. *Truesdale*, 340 N.C. at 234, 456 S.E.2d at 302.

Examples of circumstances that may raise an inference of premeditation and deliberation include (1) "conduct and statements of the defendant before and after the killing," (2) "threats made against the victim by the defendant, ill will or previous difficulty between the parties," and (3) "evidence that the killing was done in a brutal manner." *State v. Bullard*, 312 N.C. 129, 161, 322 S.E.2d 370, 388 (1984).

Defendant argues that any evidence that he premeditated and deliberated the murder in this case was negated by evidence showing the victim was shot in the hip only one time, and the paramedic did not initially assess the victim's wounds as life threatening. We disagree. The State's evidence also tended to show substantial evidence of premeditation in the form of threats to the victim. Several witnesses testified defendant made threatening statements about the victim on several occasions prior to the murder. (3 Tr. at 1033, 1076.) This evidence was sufficient to allow the trial court to submit the charge of first-degree murder to the jury. *McLaughlin*, 286 N.C. at 604, 213 S.E.2d at 243.

**[2]** In his next assignment of error, defendant contends the prosecution failed to disclose potentially exculpatory evidence in violation of the mandate of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963). This evidence consists of the fact that a percussion grenade was set off in defendant's apartment by the police before the criminal investigation began. In *Brady*, the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violate[s] due process where the evidence is material either to guilt or to punishment." *Id.* at 87, 10 L. Ed. 2d at 218. However, failure to give evidence to the defense violates defendant's right to due process only if the evidence was "material" to the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 87 L. Ed. 2d 481 (1985). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 87 L. Ed. 2d at 494.

Defendant has asserted the mere fact that a percussion grenade was set off in his apartment as material to his innocence, yet he has not addressed specifically how admission of this evidence would

have altered the jury's finding of guilt. Although defendant contends the percussion grenade contaminated the scene of the crime, he has set forth no specific argument addressing the potential effects of a percussion grenade, nor has he indicated how this evidence may relate to the question of his innocence. Interestingly, defendant introduced photographs at trial of his apartment, taken after the percussion grenade was set off, in order to establish that a fight had occurred between him and the victim. Thus, any potential effects stemming from detonation of the percussion grenade were used by defendant ultimately to support his defense. Although it is a better practice for the prosecution to disclose potentially exculpatory evidence, we find this evidence does not rise to the level of materiality defined in *Bagley*, especially in light of the fact that defendant used any potential effects this evidence could have had to his benefit at trial. *See also State v. Campbell*, 133 N.C. App. 531, 541, 515 S.E.2d 732, 739 (1999). We find no error.

[3] In his next assignment of error defendant contends the trial court erred in permitting the State's witness, Timothy Sanders, to testify as to matters of which he lacked personal knowledge in violation of Rule 602 of the North Carolina Rules of Evidence. Rule 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself." The Commentary to Rule 602 further provides that the "foundation requirements may, of course, be furnished by the testimony of the witness himself; hence personal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception."

Sanders testified defendant intended to purchase a gun for the purpose of threatening the victim. No foundation was established to indicate that Sanders either had personal knowledge of defendant's purported intent to purchase a gun or thought defendant intended to purchase a gun based on his personal perception. This testimony was admitted in violation of Rule 602. However, the State introduced this evidence in order to establish defendant's premeditation and deliberation. As previously noted, there was plenary other evidence at trial pointing to premeditation and deliberation, and as such, no "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C. Gen. Stat. § 15A-1443(a) (1999). Defendant has not satisfied his burden of showing he was prejudiced by this error.

**[4]** In his next assignment of error, defendant contends the trial court erred by failing to intervene *ex mero motu* in two arguments made by the prosecutor during the State's closing argument during trial. As defendant failed to object to any of the arguments following, "they are reviewable only to determine whether they were so grossly improper that the trial court erred by failing to intervene *ex mero motu* to correct the errors." *State v. Pierce*, 346 N.C. 471, 496, 488 S.E.2d 576, 590 (1997).

In the first argument, the prosecutor told the jury:

[Defendant] may come and say, well, I didn't mean to kill him because I didn't shoot him in the head. But that's not the law. His Honor is going to tell you if he intentionally shoots him or intentionally inflicts serious bodily harm on him, there is your intent to kill.

(4 Tr. at 1382.) Defendant argues this description does not fully define specific intent, since the State must establish not only an intentional act by the defendant resulting in the death of the victim, but also that defendant intended for the action to result in the victim's death. *State v. Keel*, 333 N.C. 52, 58, 423 S.E.2d 458, 462 (1992). The prosecutor made this statement in reference to specific evidence adduced at trial, and from the context, it did not appear to be intended as a dispositive explanation of what the State must establish in order for the jury to find specific intent. The record in this case indicates that during the closing arguments of counsel, the jury was told numerous times that the jury must take the law as instructed by the trial court. Further, at the conclusion of the arguments of counsel, the trial court gave proper instructions on all aspects of the case, including proper instructions as to the requisite intent. Thus, the trial court did not abuse its discretion by failing to intervene *ex mero motu. See, e.g., State v. Jones*, 336 N.C. 490, 496-97, 445 S.E.2d 23, 25 (1994); *State v. Harris*, 290 N.C. 681, 695, 228 S.E.2d 437, 445 (1976).

**[5]** Defendant also asserts that the prosecutor misstated the testimony of Eugenia Farrer during the State's closing argument. The prosecutor told the jury that Farrer testified to hearing defendant make threats in reference to the victim "a couple weeks" before the shooting. (4 Tr. at 1362.) Farrer testified she heard defendant make these threats several months before the shooting. (4 Tr. at 1362.) We conclude the prosecutor's misstatement was a *lapsus linguae*, like unto that in *State v. Pierce*, 346 N.C. 471, 488 S.E.2d 576 (1997). Thus, the trial court did not abuse its discretion by failing to intervene *ex*

*mero motu* in the argument to correct the misstatement, and there is no reasonable probability that, had the court taken corrective action, a different result would have been reached at trial.

No error.

Judges JOHN and EDMUNDS concur.