STATE OF NORTH CAROLINA v. VICKIE HARKEY WRIGHT

No. COA01-1123

(Filed 16 July 2002)

**1. Evidence— hearsay—911 call identifying defendant as shooter of victim—personal knowledge—excited utterance exception**

The trial court did not err in a second-degree murder case by admitting evidence of the exchange between defendant's son and the 911 operator including statements that defendant shot the victim, because: (1) the personal knowledge of defendant's son was such that he could rationally infer that defendant had shot the victim, including the fact that defendant's son was in a bedroom immediately adjacent to the room where the victim had been shot; and (2) the statements of defendant's son fell within the excited utterance exception to the hearsay rule, and the statements were probative as to whether defendant had shot the victim.

**2. Homicide— second-degree murder—jury instruction on flight**

The trial court did not commit plain error in a second-degree murder case by instructing the jury that it could consider defendant's flight as circumstantial evidence of her guilt, because: (1) the evidence in the record is such that the instruction had a negligible effect on the jury's determination of defendant's guilt; and (2) the trial court specifically instructed the jury that proof of defendant's flight by itself was insufficient to establish defendant's guilt.

Appeal by defendant from judgment entered 22 March 2001 by Judge Dennis J. Winner in Henderson County Superior Court. Heard in the Court of Appeals 5 June 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Stewart L. Johnson, for the State.*

*Roy D. Neill for defendant-appellant.*

WALKER, Judge.

Defendant appeals her conviction for second degree murder. The State's evidence tends to show that, on 27 June 2000 at approximately

2:28 a.m., the Henderson County Sheriff's Department received a 911 call from someone in a trailer-home located at 115 Dania Drive in Henderson County. The caller, later determined to be defendant's son, Jake Wright (Wright), stated that someone had been shot and that he needed the police. Thereafter, in response to a question from the 911 operator, Wright identified defendant as the shooter and defendant's boyfriend, Jerry Demary, as the victim. Wright further stated that, at the time of the shooting, he was in an adjacent bedroom when he heard a gunshot and that his mother had left the trailer. He also informed the 911 operator that the victim appeared to be unconscious, but he was "gasping."

While Wright was on the telephone, several officers arrived at the trailer. The 911 operator then instructed Wright to exit the trailer. After the officers secured the area, they began searching for defendant. They located her sitting with her legs crossed next to a truck approximately 300 yards from the trailer. As the officers approached, defendant said, "Here I am."

Inside the trailer, officers found the victim lying face up on the living room floor near a sofa and a recliner. A .410 shotgun was found on the sofa. The television was on and playing cards were spread out on a table and on the floor. The officers observed fresh blood on the floor, on the right arm of the recliner, and on a nearby end table. Also on this end table were the victim's wallet and mail addressed to him. A half-empty "Icehouse" beer can was found between the recliner and end table. An ashtray containing cigarette ashes and a half-empty "Natural Light" beer can were found on a small footstool against the sofa.

Summer Jones (Jones), a long-time friend of defendant, testified that she recognized the .410 shotgun as the one her grandfather had previously purchased for defendant. Jones stated she had seen defendant two weeks before the shooting incident using the shotgun for target practice and noted that defendant kept it in a case near the living room sofa. She further testified that defendant drinks "Natural Light" beer and that she smokes cigarettes.

Next, Dr. William Dunn (Dr. Dunn), a forensic pathologist, testified that the victim suffered a shotgun injury to the upper part of his chest and died due to excessive bleeding in his right lung. Dr. Dunn opined that, based on the nature of the injury, the muzzle of the shotgun was between two and four feet away from the victim's chest at the time it was discharged. Defendant did not present any evidence.

STATE v. WRIGHT

[151 N.C. App. 493 (2002)]

**[1]** Defendant first contends the trial court erred in admitting evidence of the exchange between Wright and the 911 operator. Specifically, she maintains the trial court should not have admitted any statements made in the exchange which refer to her as having shot the victim. Defendant's argument is based on two alternative grounds: (1) the State failed to provide sufficient evidence demonstrating that Wright had personal knowledge of the facts contained within the statements, and (2) the statements are inadmissible hearsay.

## A. Personal Knowledge

Defendant first maintains that because Wright did not observe defendant discharge the shotgun, he had no actual knowledge as to whether she shot the victim. Therefore, according to defendant, any statements made by Wright during his exchange with the 911 operator implicating her as the shooter lacked the proper foundation to be admitted as evidence.

Pursuant to Rule 602 of our Rules of Evidence:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.

N.C. Gen. Stat. § 8C-1, Rule 602 (2001). "[P]ersonal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception." N.C. Gen. Stat. § 8C-1, Rule 602 official commentary; *see also State v. Harshaw*, 138 N.C. App. 657, 661, 532 S.E.2d 224, 227, *disc. rev. denied*, 352 N.C. 594, 544 S.E.2d 793 (2000). Additionally, when a witness' statement is in the form of an opinion, the opinion is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701.

In support of her position, defendant cites our Supreme Court's holding in *State v. King*, 343 N.C. 29, 468 S.E.2d 232 (1996), and this Court's holdings in *Harshaw, supra,* and *State v. Shaw*, 106 N.C. App. 433, 417 S.E.2d 262, *disc. rev. denied*, 333 N.C. 170, 424 S.E.2d 914 (1992). However, the facts in those cases are notably distinguishable from the facts of this case. In *King*, the witness testified that the victim did not have a gun on his person the day of the shooting, yet the witness had not been with nor talked with the victim that day. *King*,

343 N.C. at 41-42, 468 S.E.2d at 240. Similarly, in *Shaw*, an officer opined that there had been a "break-in" at a residence; however, he had arrived at the residence after the "break-in" occurred and had no knowledge of how the defendant had entered the residence. *Shaw*, 106 N.C. App. at 440-41, 417 S.E.2d 267. Finally, in *Harshaw*, the witness testified the defendant had purchased a gun for the purpose of threatening the victim; yet, he could not point to any evidence as to how he had knowledge of the defendant's intentions. *Harshaw*, 138 N.C. App. at 661, 532 S.E.2d at 227. Unlike these cases, the evidence here establishes that, during the shooting, Wright was in a bedroom immediately adjacent to the room where the victim had been shot. After he heard a gunshot, Wright called 911 from the room where the shooting had taken place, while the victim was still "gasping" in front of him. Moreover, the time of night, the location of various items in the livingroom, and Wright's statement to the 911 operator that his mother had left the trailer reasonably point to the fact that defendant had been inside when the shooting occurred. Hence, we conclude that, at the time of the shooting, Wright was positioned to hear the circumstances surrounding the shooting and observe events immediately thereafter. Accordingly, his personal knowledge was such that he could rationally infer that defendant had shot the victim.

## B. Hearsay

Defendant also asserts that Wright's statements to the 911 operator are inadmissable hearsay. Generally, a statement made by a declarant, other than the witness who is testifying, is hearsay and is inadmissible for its truth unless it is relevant and falls within one of the recognized hearsay exceptions. *See* N.C. Gen. Stat. § 8C-1, Rules 801-803. The "excited utterance" exception permits the admission of statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.C. Gen. Stat. § 8C-1, Rule 803(2). For a statement to be considered an "excited utterance" there must be: " '(1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication.' " *State v. Maness*, 321 N.C. 454, 459, 364 S.E.2d 349, 351 (1988) (*quoting State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985)); *see also State v. Anthony*, 354 N.C. 372, 403, 555 S.E.2d 557, 579 (2001), *cert. denied*, —— U.S. ——, 153 L. Ed. 2d 791 (2002).

Defendant concedes that Wright "was excited by the startling events that he observed" in his home. Nonetheless, she contends that

STATE v. WRIGHT

[151 N.C. App. 493 (2002)]

Wright's statements to the 911 operator were not a "spontaneous reaction" because the statements were made in response to questions asked by the 911 operator. However, our courts have consistently held that "statements or comments made in response to questions do not necessarily rob the statements of spontaneity." *State v. Boczkowski*, 130 N.C. App. 702, 710, 504 S.E.2d 796, 801 (1998); *see also State v. Murphy*, 321 N.C. 72, 77, 361 S.E.2d 745, 747 (1987); *State v. Hamlette*, 302 N.C. 490, 495, 276 S.E.2d 338, 342 (1981); and *State v. Thomas*, 119 N.C. App. 708, 714, 460 S.E.2d 349, 353, *disc. rev. denied*, 342 N.C. 196, 463 S.E.2d 248 (1995). The critical determination is whether the statement was made under conditions which demonstrate that the declarant lacked the "opportunity to fabricate or contrive" the statement. 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 164 (3d ed. 1988).

The circumstances surrounding Wright's statement are similar to those which were present in *State v. Kerley*, 87 N.C. App. 240, 360 S.E.2d 464 (1987), *disc. rev. denied*, 321 N.C. 476, 364 S.E.2d 661 (1988). In that case, the declarant was asleep when the defendant set fire to his mattress and residence. After several minutes, a state trooper arrived on the scene and the declarant told the trooper that the defendant "had tried to burn him while he was inside asleep." Although this Court held that the statement should have been excluded on constitutional grounds, it determined that the statement "falls squarely within the excited utterance exception to the hearsay rule . . . ." *Kerley*, 87 N.C. App. at 241-43, 360 S.E.2d at 465-66.

Here, the record shows Wright made the 911 call immediately after hearing the gunshot and from the room in which the victim lay dying. Additionally, the portion of the 911 call played for the jury confirms Wright's excited condition:

911 OPERATOR: Okay. Is he conscious?

WRIGHT: I don't know. I don't know. He just fell over. He just fell over. I think he fell over. Mom shot.

911 OPERATOR: So your mother did it?

WRIGHT: Yeah.

. . .

911 OPERATOR: When did this happen? How long ago?

WRIGHT: A minute ago. I don't know. I heard it and I got up and I don't know. I don't know to touch him—if I should touch him. I don't know.

. . .

911 OPERATOR: Yeah. You were in the bed when it happened?

WRIGHT: I was in the bedroom. Yeah. I wasn't—I was in the room right next to 'em. Is there somebody on the way?

911 OPERATOR: Yeah, they're all on the way and you say it's not bleeding right now?

WRIGHT: I can't—it looks—it's not like it's spurting.

911 OPERATOR: Uh huh. And you don't know where she went for sure? You know she's not in the house.

WRIGHT: No. I don't know. I don't know. I don't know. Oh God, Almighty. And my mom.

Under these circumstances, we conclude Wright's statements fall within the "excited utterance" exception to the hearsay rule. Further, as the statements were clearly probative as to whether defendant had shot the victim, the trial court did not err in admitting them into evidence. We overrule defendant's assignment of error.

[2] Next, defendant contends the trial court committed plain error by instructing the jury that it could consider defendant's "flight" as circumstantial evidence of her guilt. It is well settled that "[i]n deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983) (citations omitted); *see also State v. Holden*, 346 N.C. 404, 435, 488 S.E.2d 514, 531 (1997), *cert. denied*, 522 U.S. 1126, 140 L. Ed. 2d 132 (1998) ("In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected"). "[W]hen the 'plain error' rule is applied, '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection had been made in the trial court.' " *Odom*, 307 N.C. at 660-61, 300 S.E.2d at 378 (*quoting Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)).

Here, the record shows the trial court, without objection from defendant, instructed the jury as follows:

The State contends and the defendant denies that the defendant fled. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. *However, proof of this circumstance is not sufficient by itself to establish defendant's guilt.*

(emphasis added). Without determining whether an instruction regarding defendant's "flight" was warranted in this case, we conclude the evidence in the record is such that the instruction had a negligible effect on the jury's determination of defendant's guilt. Further, the trial court specifically instructed the jury that proof of defendant's "flight," by itself, was insufficient to establish defendant's guilt. *See generally State v. Warren*, 348 N.C. 80, 499 S.E.2d 431, *cert. denied*, 525 U.S. 915, 142 L. Ed. 2d 216 (1998). Accordingly, we overrule defendant's assignment of error.

In sum, we conclude defendant received a fair trial free from prejudicial error.

No error.

Judges McCULLOUGH and BRYANT concur.