TIMMONS-GOODSON, Judge.
 

 Leander Dubar ("defendant") appeals his conviction of first-degree murder. For the reasons stated herein, we hold that defendant received a trial free of prejudicial error.
 

 The evidence at trial tends to show the following: Edward Debose, Jr., ("Debose") co-owned and operated the Chipboard Club ("the Club") in Wilmington, North Carolina, with Anthony Bozier ("Bozier") and Richard Wilson ("Wilson"). Defendant was an employee of the Club, working primarily at the door to collect entrance fees from patrons. On 16 April 2001, Debose and defendant argued about whether to allow some patrons to enter the Club without charge. The altercation escalated into a fistfight. Bystanders pulled defendant away from the fight, at which time he remarked "I ought to do that m****r f****r." Defendant also said "I ought to put him in his grave," or "I ought to put him in his coffin." After the fight, Debose closed the Club for the evening.
 

 Timothy Brown ("Brown"), a friend of Debose, waited for Debose outside of the Club as Debose prepared to leave. Defendant also waited outside the Club. Defendant appeared angry and sat with the door to his truck open. Defendant looked alternately at his lap and then to the door of the Club. Brown testified that he could hear the sound of bullets being loaded into the magazine of a gun coming from defendant's truck. At approximately 3:00 a.m., Debose exited the Club and Brown began to escort him home. After walking several blocks, Debose continued toward his home without Brown. Shortly thereafter, Brown heard eleven shots fired.
 

 Contemporaneously, Kareem Thomas ("Thomas") heard what he estimated were ten gunshots as he was walking in the vicinity, one block away. Approximately one minute after the shooting ended, Thomas found Debose on the ground suffering from apparent gunshot wounds. Thomas did not see anyone in the vicinity, nor did he hear the sounds of anyone leaving the area. Thomas immediately telephoned 911 for assistance.
 

 The 911 dispatch center received Thomas's call at 3:19 a.m. Lieutenant Mary Catherine Green ("Lieutenant Green") of the Wilmington Police Department arrived at the scene at 3:22 a.m. Lieutenant Green observed that Debose was still breathing, and called for medical assistance. Before medical assistance arrived, Lieutenant Green asked Debose his name to which he responded, "Debose." Lieutenant Green then asked, "Who did this to you?". Debose replied with an unintelligible word followed by the word "Dubar." Lieutenant Green repeated the question and Debose again replied with an unintelligible word followed by the word "Dubar."
 

 Police Officer Fred Elder ("Officer Elder") arrived on the scene and was called over by Lieutenant Green to hear Debose's statements. Lieutenant Green again asked Debose his name and "[w]ho did this to you?", and received the same response earlier provided. Lieutenant Green and Officer Elder clearly understood Debose as identifying "Dubar" as his assailant.
 

 At 3:23 a.m. emergency medical personnel arrived. James Williamson, a paramedic at the scene, observed that Debose was alert and able to communicate. Medical personnel transported Debose to New Hanover County Medical Center at 3:30 a.m. X-rays revealed internal bleeding and damage to Debose's liver, intestines and main aorta. Debose underwent two surgeries and continued to communicate through nods and gestures.
 

 Debose's sister, Glenda Debose Matthews ("Matthews"), visited Debose at approximately noon on 16 April 2001. Matthews asked Debose if defendant shot him. Debose responded by nodding his head in the affirmative.
 

 Detective William Craig ("Detective Craig") visited Debose the following day, 17 April 2001, and asked Debose a series of questions. Debose still could not communicate verbally, butresponded affirmatively that Dubar shot him, that "Leander" was Dubar's first name, and that Debose knew Leander Dubar from the Club.
 

 Crime scene investigators located twelve bullet shell casings in the street near the location where Debose was shot. A ballistic examination revealed that all of the casings were fired from the same gun. The bullets taken from Debose's body were similar, but investigators could not confirm that the bullets were from the same gun as the shell casings.
 

 Debose died on 18 April 2001 at 4:30 p.m. An autopsy revealed that Debose sustained gunshot wounds to the arms, chest, abdomen, and back and that he was shot from both the left and the right sides. Defendant was arrested and indicted on first-degree murder.
 

 Defendant moved prior to trial to suppress the statements Debose made at the scene of the crime. Over defendant's objections, the trial court admitted the statements made by Debose to Lieutenant Green and Officer Elder at the scene of the crime as excited utterances under Rule 803(2).
 

 At trial, the State presented evidence about defendant's location at the time of the shooting using his cellular telephone records. While defendant contended initially that he could not have committed the crime because he was driving away from downtown Wilmington at the time of the shooting, the State presented evidence to the contrary. The State's evidence tended to show through expert testimony and cellular telephone records that defendant made and received calls in downtown Wilmington at thetime the shooting occurred. Cellular records tended to show that defendant did not leave the downtown Wilmington area until 4:00 a.m. Thereafter, phone records showed calls from the Raleigh/Durham area and then Memphis. The jury convicted defendant of first-degree murder. It is from this conviction that defendant appeals.
 

 As an initial matter, we note that defendant's brief contains arguments supporting only seven of the original thirty-three assignments of error on appeal. The twenty-six omitted assignments of error are deemed abandoned pursuant to N.C.R. App. P. 28(b)(5) (2004). We therefore limit our review to those assignments of error addressed in defendant's brief.
 

 The remaining issues on appeal are whether the trial court erred by (I) admitting statements made by Dubose at the scene of the crime; (II) failing to instruct the jury on lesser included offenses; and (III) denying defendant's motion to dismiss.
 

 Defendant first argues that the trial court erred by admitting statements Debose made at the scene of the crime under the excited utterance exception to the hearsay rule. We disagree.
 

 Defendant contends that there was no evidence that Debose's statements were a "spontaneous reaction." Instead, defendant contends that the accusation made at the crime scene could have been a "convenient deception" devised by Debose following their argument and fight earlier in the evening. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2003). For a statement to be admissible as an exception to the hearsay rule as an excited or spontaneous statement, it must be "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.C. Gen. Stat. § 8C-1, Rule 803(2) (2003). To admit a statement as an "excited utterance," there must be: "(1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication."
 
 State v. Wright,
 

 151 N.C. App. 493
 
 , 496,
 
 566 S.E.2d 151
 
 , 154 (2002).
 

 The essential determination we must make is whether the statements were made under
 
 conditions
 
 which tend to demonstrate that Debose lacked the "opportunity to fabricate or contrive" the statements. The facts and circumstances surrounding the statement are similar to those present in
 
 State v. Hamlette.
 
 In
 
 Hamlette,
 
 declarant responded to a police officer's questions and implicated the defendant three minutes after declarant was shot three times. The court there held that these circumstances alone, the proximity in time of the statements to the shooting and seriousness of the wounds, were sufficient to show that the declarant was "under the immediate influence of the act."
 
 See State v. Hamlette,
 

 302 N.C. 490
 
 , 495,
 
 276 S.E.2d 338
 
 , 342 (1981). We conclude that the shooting of Debose nine times is a sufficiently startling experience to suspend his reflective thought. The statements made to Lieutenant Green occurred within three minutes of the shooting, leaving little opportunity for Debose to fabricate a story about the identity of his assailant. Thus, the trial court did not err in finding that Debose's statements at the scene of the crime were admissible as an excited utterance.
 

 Defendant next argues that the trial court erred by refusing to instruct the jury on the lesser-included offenses of second-degree murder and voluntary manslaughter. We disagree.
 

 "It is unquestioned that the trial judge must instruct the jury as to a lesser-included offense of the crime charged, when there is evidence from which the jury could find that the defendant committed the lesser offense."
 
 State v. Conner,
 

 335 N.C. 618
 
 , 635,
 
 440 S.E.2d 826
 
 , 835 (1994)
 
 quoting State v. Redfern,
 

 291 N.C. 319
 
 , 321,
 
 230 S.E.2d 152
 
 , 153 (1976).
 
 N.C. Gen. Stat. § 14-17
 
 states:
 

 A murder which shall be perpetrated by means of a nuclear, biological, or chemical weapon of mass destruction as defined in G.S. 14-288.21, poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree, (2003). All other kinds of murder "shall be deemed murder in the second degree."
 

 Id.
 

 In
 
 State v. Strickland,
 
 the North Carolina Supreme Court held, [i]f the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first[-]degree, including premeditation and deliberation, and there is
 
 no
 
 evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second[-]degree murder.
 

 State v. Strickland,
 

 307 N.C. 274
 
 , 293,
 
 298 S.E.2d 645
 
 , 658 (1983). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith,
 

 300 N.C. 71
 
 , 78-9,
 
 265 S.E.2d 164
 
 , 169 (1980).
 

 Premeditation and deliberation are generally proven using circumstantial, not direct, proof.
 
 State v. Vause,
 

 328 N.C. 231
 
 , 238,
 
 400 S.E.2d 57
 
 , 62 (1991). Some circumstances from which premeditation and deliberation might be inferred are:
 

 (1) lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulty between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.
 

 Id.
 

 In the instant case, the State provided substantial evidence of premeditation and deliberation by showing defendant's threatening statements made after the fight and his presence outside the Club after the fight where a witness testified tohearing the sounds of a firearm clip being loaded coming from where defendant sat. The State further demonstrated premeditation and deliberation by presenting evidence that defendant and Debose argued and fought, which shows ill-will between the parties. Defendant offered no evidence to negate the State's evidence of premeditation and deliberation. Thus, we hold that the trial court did not err in refusing to instruct the jury on second-degree murder.
 

 Defendant's final argument is that the trial court erred in denying defendant's motion to dismiss at the close of all the evidence. We disagree.
 

 In a ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each element of the offense charged.
 
 See State v. Bullard,
 

 312 N.C. 129
 
 , 160,
 
 322 S.E.2d 370
 
 , 387 (1984). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 Smith,
 

 300 N.C. at 78-9
 
 ,
 
 265 S.E.2d at 169
 
 . When reviewing the evidence, the trial court must consider all evidence in the light most favorable to the prosecution, granting the State the benefit of every reasonable inference.
 
 See State v. Brown,
 

 310 N.C. 563
 
 , 566,
 
 313 S.E.2d 585
 
 , 587 (1984).
 

 Defendant's motion to dismiss relied heavily on the inadmissibility of Debose's statements identifying defendant as his assailant. Because we hold that Dubose's statements were properly admitted, we conclude that there was sufficient evidenceto overcome the motion to dismiss. Therefore, we overrule this assignment of error.
 

 No error.
 

 Judges Bryant and ELMORE concur.
 

 Report per Rule 30(e).