IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-890-2

Filed 4 March 2026

Robeson County, Nos. 19 CR 050642-770, 22 CR 001726-770

STATE OF NORTH CAROLINA

v.

GRANT LEE HUNT, Defendant.

Appeal by Defendant from judgments entered 24 March 2023 by Judge James G. Bell in Robeson County Superior Court. Heard in the Court of Appeals 14 August 2024, decision filed 15 October 2024. Vacated and remanded by the Supreme Court on 23 May 2025 in light of *State v. Reber*, 386 N.C. 153 (2024).

*Attorney General Jeff Jackson, by Special Deputy Attorney General Thomas J. Campbell, for the State.*

*Attorney Daniel M. Blau, for Defendant–Appellant.*

MURRY, Judge.

On remand by order of the North Carolina Supreme Court on 23 May 2025 in *State v. Hunt*, 296 N.C. App. 245 (2024), vacating and remanding this Court's decision filed 15 October 2024. Grant L. Hunt (Defendant) appeals from a judgment entered upon a jury verdict finding him guilty of assault with a deadly weapon inflicting serious injury (AWDWISI) and injury to personal property. For the reasons below, this Court holds that the trial court (1) did not plainly err by allowing Trooper

Covington's lay-opinion testimony; (2) did not err by permitting the State to complete its closing argument without an *ex mero motu* intervention; (3) did not plainly err by deviating from pattern jury instructions on evidentiary weight; (4) did err by incorporating the defective habitual-felon indictment into Defendant's total sentence; and (5) did err by relying on insufficiently supportive evidence to reach its restitution award for the victim. This Court also holds that Defendant did not receive ineffective-assistance-of-counsel (IAC) due to his counsel's failure to object to Trooper Covington's testimony.

As a result of these holdings, this Court vacates and remands the trial court's sentencing and restitution orders for further proceedings not inconsistent with this opinion. We recite only the facts and procedural posture relevant to this issue on remand, noting that *State v. Hunt*, 296 N.C. App. 245 (2024), *vacated and remanded per curiam*, 387 N.C. 537 (2025), summarizes additional underlying facts.

## I.  Background

On 25 January 2019, Defendant veered off the road and struck Timothy Todd (the victim) with his Ford F-250 truck while the victim was riding an ATV in his driveway, causing multiple injuries and leaving the victim unconscious for six weeks. On 6 July 2020, a Robeson County grand jury indicted Defendant for assault with a deadly weapon with intent to kill inflicting serious injury (AWDWIKISI) and injury to personal property. On 3 January 2023, the grand jury also indicted him for attaining habitual-felon status based on the following prior-felony convictions: (1)

forgery and uttering on 10 September 1996; (2) AWDWISI on 31 May 1994; and (3) breaking and entering on 5 January 1994. This matter came on for trial on 22 March 2023 in Robeson County Superior Court.

At trial, the victim's neighbor, Quinten Oxendine, testified to witnessing the following events while riding ATVs with the victim:

> OXENDINE: I was on my ATV. The victim was on his ATV in front of me. We were about to leave out of the driveway. That's when that—the white truck comes by, crossed the double yellow lines. Hits the ATV. It ends up in the ditch.
>
> STATE: Did you hear any noise as Defendant approached?
>
> OXENDINE: I heard the truck rev up.
>
> . . . .
>
> OXENDINE: So I jumped off my ATV and I heard Defendant say, "Where's that motherf***er at?"

(Quotation modified.) Oxendine testified to hearing Defendant yell after the collision, "Y'all motherf[***]ers w[ere] in my yard." He did not hear or see Defendant check on the victim's wellbeing after the collision.

North Carolina State Trooper Kyle Covington responded to the scene. He testified that, upon arrival, he observed an ATV off the roadway in a yard and a pickup truck partially in the roadway. Trooper Covington opined the collision was "intentional" as follows:

> STATE: Okay. And based upon your observations, did you form an opinion whether this was an accidental or intentional act?
>
> TROOPER COVINGTON: My opinion is it was an intentional act.

STATE: Why is that, sir?

TROOPER COVINGTON: Just the markings on the roadway. The—what Defendant said he was doing and why he was doing it. Where he placed the ATV. And . . . just that was not possible in itself. There was also a video that showed Defendant's actions prior to and it didn't match his story either. And everything on scene depicted it that it was an intentional act.

(Brackets omitted.) Defendant did not object to Trooper Covington's testimony. The State introduced photographs depicting damage consistent with a high-force collision, including: (1) Defendant's tire marks leaving the road, (2) Defendant's truck angled towards the victim's ATV, (3) an absence of brake marks in Defendant's tire path, and (4) the damage to both vehicles.

Additionally, the victim testified to incurring approximately $525,000 and $42,000 in medical and air-flight bills, respectively. No party offered additional evidence to corroborate the victim's accounting of these bills. During closing arguments, the State argued:

There's no debris in the roadway. No skid marks in the roadway. What do we hear from [Defendant]? I told my wife I just hit [the victim]. Then he says about getting out of the truck and going to check on [the victim]. And seeing his torso sticking out from underneath the truck. And then he gets back in the truck and he backs out over his legs? Did you hear any testimony that anybody moved [the victim]? Did he get one last shot at him? Okay. I got you now, bro. You're not gonna walk. You're not gonna ride that [ATV]. You're never gonna bother me again if you're still alive. You're not gonna get on a[n ATV].

Defendant did not object to these arguments at any point.

At the charge conference, the parties agreed that the trial court would instruct

the jury on weighing the evidence as follows: "You are the sole judges of the weight to be given any evidence. *If you decide that certain evidence is believable*[,] you must then determine the importance of that evidence in light of all other believable evidence in the case." N.C.P.I.—Crim. 101.20 (emphasis added). During the actual jury charge, the trial court deviated from the pattern jury instruction as follows: "You are the sole judges of the weight to be given any evidence—to any evidence. *You must decide that certain evidence is believable*. You must then determine the importance of that evidence in light of all the other believable evidence in the case." (Emphasis added). Defendant objected to neither of these instruction iterations.

On 24 March 2023, the jury convicted Defendant of the lesser-included charge of AWDWISI and injury to personal property. The trial court sentenced Defendant as a habitual felon to 120–156 months' imprisonment with recommended work release. At the sentencing hearing, the State quantified the victim's medical bills as "over half a million dollars in medical bills and $40,000 life flight." It then remarked "that there was $550,000 in medical bills and $42,000 in life flight," and asked for a restitution award of $592,000. The trial court then entered a civil judgment for $592,000. Defendant timely appealed.

## II. Jurisdiction

The North Carolina Supreme Court remanded Defendant's appeal for further consideration in light of *State v. Reber*, 386 N.C. 153 (2024), to this Court, which has jurisdiction over Defendant's appeal of a final judgment of the trial court under

N.C.G.S. §§ 7A-27, 15A-1444. *See* N.C.G.S. § 7A-27(b)(1) (2025) (final judgment of trial court); *id.* § 15A-1444(a) (pleaded not guilty but found guilty). IAC claims generally "should be considered through motions for appropriate relief and not on direct appeal." *State v. Stroud*, 147 N.C. App. 549, 553 (2001). But because "the cold record reveals that no further investigation is required," this Court also has jurisdiction to determine Defendant's IAC claim on direct review. *State v. Fair*, 354 N.C. 131, 166 (2001).

## III.    Analysis

In addition to the issue on remand, Defendant asserts several challenges not addressed in this Court's prior majority opinion in *State v. Hunt*. Defendant contends that: (1) he received IAC due to his counsel's failure to object to Trooper Covington's testimony; (2) the trial court erred by failing to intervene *ex mero motu* during the State's closing argument; (3) the trial court erred by misstating the jury instructions during the jury charge; (4) his habitual felon indictment was fatally defective; (5) the trial court erred by sentencing him as a habitual felon; (6) he received IAC due to his counsel's failure to challenge his habitual-felon indictment; and (7) the trial court erred by entering a restitution order unsupported by the evidence. For the reasons below, we hold that Defendant did not receive IAC and that the trial court reversibly erred only in entering its sentencing and restitution orders. We thus vacate only those two orders and remand them for further proceedings not inconsistent with this opinion.

**A. Lay-Witness Testimony**

On remand, Defendant argues that the trial court plainly erred by allowing lay witness Trooper Covington to give "an expert opinion about how the accident happened[,] and that [Defendant] intentionally hit the victim." For the following reasons, we disagree and hold that the trial court did not plainly err.

### 1. *Post-***Reber** *Plain Error*

As a threshold matter, we note Defendant's failure to preserve his argument for appellate review by not objecting during Trooper Covington's opinion testimony. *See* N.C. R. App. P. 10(a)(1). But we may "review unpreserved issues for plain error when they involve (1) errors in the judge's instructions to the jury[ ] or (2) rulings on the admissibility of evidence," *State v. Gregory*, 342 N.C. 580, 584 (1996), provided that the appellant also "specifically and distinctly" argues plain error to this Court, *see State v. Frye*, 341 N.C. 470, 496 (1995); N.C. R. App. P. 10(a)(4). Accordingly, we review the challenged portion of Trooper Covington's testimony for plain error.

Our Supreme Court recently clarified the plain-error rule in *State v. Reber*, 386 N.C. 153, 158 (2024), under which a defendant must satisfy a three-part test. *First*, he must establish the trial court's "fundamental error." *Id. Second*, he must demonstrate "that the error had a 'probable impact' on the outcome, meaning that 'absent the error, the jury probably would have returned a different verdict.' " *Id.* (quoting *State v. Lawrence*, 365 N.C. 506, 518–19 (2012)). This "probable impact" standard requires the possibility of a different verdict to be "significantly more likely

than not," *i.e.*, "almost certain[ ]" or "doubtless." *Id.* at 159 (first quoting *Probably*, *New Oxford American Dictionary* (3d ed. 2010); and then quoting *Probably*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2007)). *Third*, he must show "that the error is an 'exceptional case' that warrants plain[-]error review, typically by showing that the error seriously affects 'the fairness, integrity or public reputation of judicial proceedings.' " *Id.* (quoting *Lawrence*, 365 N.C. at 518); *see State v. Odom*, 307 N.C. 655, 660 (1983) (plain-error review should be "applied cautiously and only in the exceptional case" where "grave error" "amounts to a denial of a fundamental right of the accused," resulting "in a miscarriage of justice").

### a. *"Fundamental Error" Prong*

Defendant attempts to distinguish this case from *Reber* by focusing on the "probable impact" prong and characterizing Trooper Covington's testimony as "the State's strongest evidence on the central questions before the jury." Applying *Reber*'s plain-error test, we first consider whether Defendant demonstrated a "fundamental error" at trial. *Reber*, 286 N.C. at 158. Generally, a lay witness may not opine on a defendant's state of mind or intent because that testimony requires him to draw inferences and conclusions based upon perceived facts. *State v. Sanders*, 295 N.C. 361, 369 (1978). But the North Carolina Rules of Evidence allow a lay witness to opine on a matter "rationally based on [his] perception" which is "helpful to a clear understanding of his testimony or the determination of a fact [at] issue." N.C. R. Evid. 701 [hereinafter Rule]. This latter testimony includes "[c]ommon inferences derived

from the appearance, condition, or mental or physical state of persons," *State v. Hedgepeth*, 350 N.C. 776, 791 (1999), of which the witness has "personal knowledge," *State v. Givens*, 95 N.C. App. 72, 79 (1989). And under Rule 704, "[t]estimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Rule 704.

In full context, Trooper Covington testified to his personal knowledge of the scene where he observed the victim's ATV in a ditch, tire marks departing the roadway, a lack of brake marks, and Defendant's damaged truck. This Court has held similar testimony admissible where the lay witness bases his testimony on "rational" knowledge and observations. *See, e.g.*, *State v. Howard*, 215 N.C. App. 318, 325 (2011) (holding police officer's lay-opinion testimony admissible as "based on . . . [his] rational observation" that "represented nothing more than an instantaneous conclusion . . . reached after observing" scene); *State v. McVay*, 174 N.C. App. 335, 339 (2005) (holding police officer's lay-opinion testimony that defendant "tried to kill" the victim admissible because it "amounted to nothing more than shorthand statements of fact based on their knowledge and observations"). Likewise, Trooper Covington based his opinion of the collision's intentionality on his contemporaneous "rational" observations and "instantaneous conclusion[s]" at the scene. *Howard*, 215 N.C. App. at 325. Thus, Defendant fails to satisfy *Reber*'s first prong by showing a "fundamental error." *Reber*, 386 N.C. 158.

### b. *"Probable Impact" Prong*

Defendant also fails to satisfy *Reber'*s second prong by showing a "probable impact" on the verdict in light of the State's other evidence tending to show that Defendant intentionally collided with the victim's ATV. Had the trial court excluded Trooper Covington's testimony, the jury would still have heard Oxendine's testimony that he saw Defendant's truck accelerate, rev its engine, cross the yellow centerline, and swerve toward the victim's ATV. The jury would have also seen photographic evidence showing Defendant's truck departing the roadway, leaving no break marks, and veering towards the victim's ATV. *See State v. Buie*, 194 N.C. App. 725, 734 (2009) (holding police officer's testimony was harmless error—*not the higher plain-error standard*—since "sufficient evidence . . . support[ed] the jury's decision, independent from the testimony").

To accept Defendant's version, the jury would have had to believe that a Ford F-250 truck struck an ATV, turned into the point of impact, and pushed it across the opposite lane into the ditch without leaving debris or tire marks on Defendant's side of the road. Thus, Defendant fails to satisfy *Reber'*s second prong by demonstrating that, without Trooper Covington's testimony, the jury "*probably would have* returned a different verdict." *Reber*, 386 N.C. at 158 (emphasis added).

### c. *"Exceptional Case" Prong*

Finally, Defendant fails to satisfy *Reber'*s third prong by showing that this is an "exceptional case . . . seriously affect[ing] the fairness, integrity[,] or public reputation of judicial proceedings." *Id.* at 158. On appeal, a defendant must offer

support for each element of plain error, including the "necessary reasons or arguments as to why the alleged error . . . is an exceptional case or why this will seriously affect the fairness, integrity, or public reputation of judicial proceedings." *State v. Patterson*, 269 N.C. App. 640, 645 (2020). Because Defendant fails to argue how this case "seriously affects the fairness, integrity or public reputation of judicial proceedings," *Reber*, 386 N.C. at 158, "we cannot impart any meaningful review for plain error," *Patterson*, 269 N.C. at 645. Thus, Defendant fails to satisfy *Reber*'s third prong by establishing this case's exceptionality. *See Reber*, 386 N.C. at 162.

Defendant cannot demonstrate plain error. *See id.* at 158. Considering the ample evidence supporting the State's theory that Defendant intentionally caused the collision, we conclude that any error in admitting Trooper Covington's testimony would be nonprejudicial at worst. *See State v. Harshaw*, 138 N.C. App. 657, 662 (2000) (holding improper testimony nonprejudicial where other evidence supported State's theory of premeditation and deliberation). Therefore, the trial court did not plainly err.

### 2. *Ineffective Assistance of Counsel*

Defendant also claims that he received IAC because his counsel failed to object to Trooper Covington's testimony. To successfully bring an IAC claim, Defendant must show both that (1) his counsel's deficient performance "fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord State v.*

*Braswell*, 312 N.C. 553, 562–63 (1985) (lockstepping N.C.'s constitutional standard for IAC claims with *Strickland* test). We review IAC claims *de novo. See State v. Wilson*, 236 N.C. App. 472, 475 (2014). For the following reasons, we disagree and hold that Defendant did not receive ineffective assistance.

Notably, "while an analysis of plain error may inform an analysis of prejudice under the ineffective assistance of counsel test, it should not be determinative." *State v. Lane*, 271 N.C. App. 307, 313–314 (2020) (recognizing that while "both the ineffective assistance of counsel test and the plain error standard require a showing of prejudice," the tests "are not so similar that a finding of no error always precludes a finding of ineffective assistance of counsel"). To satisfy IAC's prejudice requirement, a defendant "must show . . . a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Allen*, 360 N.C. 297, 316 (2006) (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is that which is "sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, for which "a different result must be substantial, not just conceivable," *Lane*, 271 N.C. App. at 313–14 (quotation omitted). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," this Court need not decide whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

Here, Defendant fails to show a "reasonable probability" of a different outcome had his counsel objected to Trooper Covington's testimony. *Allen*, 360 N.C. at 316. As

discussed above, even without Trooper Covington's testimony, the State offered ample additional evidence through Oxendine's eye-witness testimony that he saw Defendant's truck accelerate towards the victim's ATV and photographic evidence corroborating his testimony. Therefore, any failure by defense counsel to object to Trooper Covington's testimony would not have "undermine[d] confidence" in the jury's verdict, *Strickland*, 466 U.S. at 694, or created "a reasonable probability" of a different result, *Allen*, 360 N.C. at 316. Thus, Defendant has failed to show prejudice. Accordingly, we hold that he did not receive IAC on this point.

## B. **Closing Arguments**

Next, Defendant claims that the trial court erred by failing to intervene *ex mero motu* during the State's closing argument when it stated that Defendant got "back in the truck and he backs out over [the victim's] legs." We disagree.

As noted above, a defendant's failure to object to an alleged error at trial ordinarily prevents our review. N.C. R. App. P. 10(a)(1). A defendant cannot "sit back in silence during closing arguments but then claim error whenever a trial court fails to address or otherwise correct a misstatement of the evidence." *State v. Parker*, 377 N.C. 466, 474 (2021). That is, absent timely objection, a "trial court is not required to intervene *ex mero motu* unless the argument strays so far from the bounds of propriety as to impede defendant's right to a fair trial.'" *Id.* (quotation omitted). Because Defendant did not object, our "review is limited to an examination of whether the argument was so grossly improper that the trial [court] abused [its] discretion in

- 13 -

failing to intervene *ex mero motu*." *State v. Smith*, 357 N.C. 604, 614 (2003) (alterations in original; quotation omitted).

To show gross impropriety, a defendant must demonstrate "comments so infected . . . with unfairness that they rendered the conviction fundamentally unfair." *State v. Davis*, 349 N.C. 1, 23 (1998). Gross impropriety is an "exceedingly high bar," surmountable only when the State's remarks go "so far beyond the parameters of propriety" that the trial court *must* "intervene to protect the rights of the parties and the sanctity of the proceedings." *Reber*, 386 N.C. at 163. Even if the State's remarks were improper, we must still determine whether they were prejudicial by considering "the likely impact of any improper argument in the context of the entire closing." *State v. Copley*, 374 N.C. 224, 230 (2020) (citation modified).

Here, the State either misstated or overstated the evidence by arguing Defendant had intentionally backed over the victim's legs. *See Parker*, 377 N.C. at 474. We caution the State to avoid such conduct, which may trigger a mistrial or result in a new trial. Nonetheless, these statements—measured against the argument's entirety—were not so grossly improper as to prejudicially warrant Defendant a new trial. *See id.* Thus, we hold that the trial court did not err by declining to intervene *ex mero motu*.

## C. Jury Instructions

Next, Defendant argues that the trial court erred by deviating from the pattern instructions on evidentiary weight by stating that the jury "must decide that certain

evidence is believable" instead of "if you decide that certain evidence is believable"— an iteration to which the parties had agreed at the charge conference. We disagree.

Where "a trial court agrees to give a requested pattern instruction, an erroneous deviation from that instruction is preserved for appellate review without further" objection. *State v. Lee*, 370 N.C. 671, 676 (2018). A party's "request for an instruction at the charge conference . . . sufficient[ly] compli[es] with" Appellate Rule 10(b)(2) to merit review if it "is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions." *State v. Ross*, 322 N.C. 261, 265 (1988). Because the trial court agreed to instruct the jury in accordance with N.C.P.I.—Crim. 101.20 by saying, "if you decide that certain evidence is believable," but instead said, "you must decide that certain evidence is believable," this issue is preserved for our review. *See* N.C.G.S. § 15A-1443(a).

This deviation prejudicially "requires a new trial *only* if there is a reasonable possibility that," but for "the error in question, "a different result would have been reached at trial." *State v. Castaneda*, 196 N.C. App. 109, 116 (2009) (citation modified; emphasis added). If the instructions construed as a whole clearly show "no reasonable cause to believe that the jury was misled or misinformed," we "will not sustain[ ]" "any exception even though the instruction could have been more aptly worded." *State v. Williams,* 362 N.C. 628, 652 (2008) (ellipses omitted). "Isolated expressions of the

trial court, standing alone, will not warrant reversal when the charge as a whole is correct." *State v. Graham*, 287 N.C. App. 477, 486–87 (2023).

Here, although the trial court's error deviated from the agreed-upon jury instructions, it did not have a probable impact on Defendant's guilt when read in context. *Accord State v. Williams*, 315 N.C. 310, 327–28 (1986). In other words, the trial court's variance was not so fundamental that the jury would have reached a different result. *See Lawrence*, 365 N.C. at 518. The trial court quickly followed the isolated phrasing with the correct language instructing the jury to evaluate which evidence it found believable and to weigh that evidence against the rest. It did not direct jurors to believe any particular witness or class of evidence. Therefore, this Court holds that the trial court did not commit plain error resulting in a *probable impact* on the jury's finding of guilt. *See Reber*, 386 N.C. at 186.

### D. Habitual-Felon Indictment

Next, Defendant argues that his habitual-felon indictment was fatally defective since two of the referenced convictions do not meet the statutory definition in N.C.G.S. § 14-7.1. The State concedes error on this point. For the following reasons, we agree and remand for resentencing.

Felony pleadings must state all essential elements of the crime. *See* N.C.G.S. § 15A-924(a)(5); *State v. Palmer*, 293 N.C. 633, 639 (1977) (both indictments and warrants must "allege lucidly and accurately all the essential elements of the offense endeavored to be charged"). Section 14-7.1 allows the trial court to charge a defendant

as a habitual felon if he "has been convicted of or pled guilty to three felony offenses." *State v. Blakney*, 233 N.C. App. 516, 521 (2014) (quotation omitted); *see* N.C.G.S. § 14-7.1. Our Supreme Court has long required that the three predicate felonies be sequential and non-overlapping, *i.e.*, each subsequent felony must be committed after conviction of the preceding felony. *See State v. Allen*, 292 N.C. 431, 433 (1977).

This Court has similarly invalidated indictments where the convictions alleged fall outside the statute. *E.g.*, *State v. Jester*, 249 N.C. App. 101, 107–08 (2016) (defective acceptance of defendant's stipulation to habitual-felon status absent full colloquy under § 15A-1022); *State v. LePage*, 204 N.C. App. 37, 54 (2010) (defective indictment including controlled substances outside actual Schedule IV); *State v. Barnett*, 223 N.C. App. 65, 71 (2012) (defective indictment that failed to allege defendant was required to register as sex offender).

Here, Defendant's habitual-felon indictment shows all three of his prior felony charges and convictions overlapping with one another. The indictment's dates charge that Defendant committed the March and April 1993 offenses before his conviction for the September 1992 offense. Indeed, all three convictions arose from proceedings that overlapped with rather than succeeded one another. Because the indictment itself shows the predicate felonies overlapped, it fails to allege the essential element of sequential, non-overlapping convictions required by N.C.G.S. § 14-7.1. As a result, the habitual-felon indictment is fatally defective. Thus, we vacate the habitual-felon judgment and remand for resentencing without the habitual-felon enhancement.

Because Defendant's habitual-felon indictment is fatally defective, we need and do not consider whether sentencing occurred without a plea or jury verdict on that status or Defendant's IAC claim premised on counsel's failure to challenge the habitual-felon status.

### E. Restitution Award

Finally, Defendant argues the evidence does not support the trial court's $592,000 restitution award. The trial court must base its restitution award on sufficient evidence. *State v. Mumford*, 364 N.C. 394, 403 (2010). Although "the quantum of evidence needed to support a restitution award is not high," it must nevertheless be competent, specific, and reliable. *State v. Moore*, 365 N.C. 283, 285 (2011). Whether the evidence supports the trial court's restitution order is a question of law reviewed *de novo* on appeal. *State v. Wright*, 212 N.C. App. 640, 645 (2011). For the following reasons, we agree with Defendant on this point and remand for a new hearing.

At trial, the victim testified to medical bills of approximately $525,000 and that he "thought" his medical-flight bill was $42,000. But at the sentencing hearing, the State misstated the total to be $550,000. Even crediting the victim's approximate testimony, the record supports a maximum award of only $567,000. Neither did the State offer any evidence supporting any amount of medical costs, much less in the amount of $592,000. This Court has held that approximate or generalized testimony, without supporting documentation, cannot sustain a restitution order. *See State v.*

*Buchanan*, 260 N.C. App. 616, 623–24 (2018) (vacating award where victim testified only to "about $10,000" in bills without corroborating evidence).

Here, while there was at least some evidence supporting an award of restitution, the evidence lacks the level of "specific[ity] and reliab[ility]" required to sustain the $592,000 figure. *State v. Clagon*, 279 N.C. App. 425, 435 (2021). Rather, the victim's testimony was approximate, the State misstated the amount, and no party introduced medical bills or other corroborating records supporting the final amount. Because the only evidence was either estimated or misstated, and uncorroborated, it falls short of the "specificity" necessary to support a restitution order. *See id.* Accordingly, we vacate the restitution order and remand for a new hearing to determine the amount of damage proximately caused by Defendant's conduct and to calculate the correct amount of restitution.

## IV.    Conclusion

For the reasons discussed above, this Court holds that (1) the trial court did not plainly err by allowing Trooper Covington's testimony; (2) that Defendant did not receive ineffective assistance of counsel; and (3) that the trial court did not plainly err in its jury instructions. But this Court does hold that the trial court in rendering its sentencing and restitution orders and thus vacates and remands them for further proceedings not inconsistent with this opinion.


NO ERROR IN PART; NO PLAIN ERROR IN PART; ERROR IN PART;

VACATED IN PART AND REMANDED.

Judges TYSON and STADING concur.