700 S.E.2d 766 (2010)
In the Matter of K.D.L.
No. COA09-1653.
Court of Appeals of North Carolina.
October 19, 2010.
*767 Attorney General Roy Cooper, by Assistant Attorney General Amanda P. Little, for the State.
Geeta Kapur, Durham, for juvenile-appellant.
HUNTER, JR., ROBERT N., Judge.
Oliver,[1] age twelve, appeals the trial court's final order adjudicating him delinquent and entering a level 1 disposition. He argues the trial court erred when it failed to suppress several incriminating statements made while he was being detained by a school resource officer and school officials. When a juvenile gives incriminating statements *768 in the course of custodial interrogation without being afforded the warnings required by Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694, 726 (1966), and N.C. Gen.Stat. § 7B-2101(a)(2009), and without being afforded his right to have a parent present during interrogation pursuant to N.C. Gen.Stat. § 7B-2101(b)(2009), the denial of his motion to suppress is error. We hold the trial court erred in denying Oliver's motion to suppress.

I. Jurisdiction and Standard of Review
After the trial court entered a final order adjudicating Oliver delinquent and entering a level 1 disposition, Oliver gave oral notice of appeal at his hearing. Therefore, we have jurisdiction over his appeal. See N.C. Gen. Stat. § 7B-2602 (2009) (stating appeal shall be to this Court if a proper party gives oral notice of appeal from a final order at a juvenile hearing); N.C. Gen.Stat. § 7B-2604 (2009) (stating a juvenile is a proper party).

II. Background
This appeal stems from a teacher's discovery of a plastic bag of marijuana on a classroom floor at East Millbrook Middle School in Raleigh. The teacher suspected the marijuana belonged to Oliver and escorted him to Assistant Principal Jewett's office in Building 9. The school resource officer, Deputy Holloway, was contacted by the school's head principal, Mr. Livengood. When Deputy Holloway arrived at the principal's office, he observed Oliver sitting with Principal Livengood who had been questioning Oliver about the incident. Principal Livengood informed Deputy Holloway of what had transpired. The two adults spoke with Oliver before Deputy Holloway briefly left to inspect the classroom where the marijuana was discovered.
Deputy Holloway returned to Principal Jewett's office and took Oliver to his vehicle to be transported to Principal Livengood's office in another building. Deputy Holloway testified that he patted down Oliver to ensure he had no weapons before letting him into the patrol car because there is a history of weapons at the school. Deputy Holloway also testified that he spoke with Oliver while transporting him, offering words of advice and encouragement, but did not ask him any questions. Oliver was not placed in handcuffs.
Principal Livengood questioned Oliver in his office beginning around 9:00 a.m. while Deputy Holloway was in the room. Deputy Holloway testified Oliver first denied the marijuana was his, but when Holloway was in the restroom, Oliver admitted to Principal Livengood it belonged to him. Oliver also revealed he had another bag of marijuana as well as some cash, all of which Deputy Holloway saw on the table when he returned from the restroom. The questioning continued, and Oliver confessed he purchased the marijuana from two other students, Charlie and Bill. Oliver was instructed to wait outside the office. He remained outside the office while Principal Livengood questioned the other two students, but he was not guarded by Deputy Holloway, who remained inside the office. Charlie and Bill quickly admitted to selling a bag of marijuana to Oliver, and apparently left the principal's office.
Principal Livengood brought Oliver back into his office and resumed questioning him with Deputy Holloway present. Deputy Holloway testified that Principal Livengood questioned Oliver for about five or six hours that day because Oliver changed the details of his story several times during the questioning. It appears from the record that Oliver was not permitted to leave for lunch. At around 3:00 p.m., Principal Livengood contacted Oliver's mother to inform her of what had transpired and that Oliver would be suspended. Deputy Holloway left school around that time and testified that, to his knowledge, the principal had not fully concluded matters involving Oliver because his mother had not yet arrived to collect him. Deputy Holloway testified he did not ask Oliver any questions during the principal's investigation. At no point was Oliver read his Miranda rights, nor was he told he was entitled to speak with his parents or have them present during questioning.
On 3 March 2009, Deputy Holloway filed juvenile petitions alleging Oliver committed two offenses: (1) felony possession of marijuana with intent to sell and deliver a controlled substance and (2) selling or delivering *769 a controlled substance. Oliver filed a motion to suppress. Neither Oliver nor the other two children presented evidence during the suppression hearingonly Deputy Holloway testified. The trial court, Judge Robert Rader presiding, denied Oliver's motion to suppress, concluding Deputy Holloway's presence during the principal's investigation did not transform the encounter into custodial interrogation: "[T]he officer never ask[ed any] questions. The officer actually left. At one point they leftthey took breaks.... I don't think it would rise to the level of custodial interrogation under the current law. So motion is denied." Oliver waived his right to a probable cause hearing and stipulated to a finding of probable cause for the offenses.
Pursuant to a plea agreement, the State dismissed the charge of selling or delivering a controlled substance of marijuana and amended the charge of felony possession of marijuana to the lesser offense of misdemeanor possession of marijuana. Oliver entered an admission to one count of misdemeanor possession of marijuana and reserved his right to appeal the denial of his motion to suppress. The trial court, Judge Craig Croom presiding, adjudicated Oliver delinquent and entered a level 1 disposition, placing Oliver on probation for six months. Juvenile appealed from this order.

III. Analysis
Oliver argues the trial court committed reversible error in denying his motion to suppress because he was subjected to custodial interrogation in violation of his Fifth Amendment right against compelled self-incrimination and his statutory rights provided by the North Carolina Juvenile Code. After review, we conclude Oliver's confession should have been suppressed.

A. Standard of Review
Generally, an appellate court's review of a trial court's order on a motion to suppress is strictly limited to a determination of whether its findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion. Where, however, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal.... [W]e [then] review the trial court's order to determine only whether the findings of fact support the [conclusions of law]....
State v. Roberson, 163 N.C.App. 129, 132, 592 S.E.2d 733, 735-36 (citations and internal quotation marks omitted). Legal conclusions, including the question of whether a person has been interrogated while in police custody, are reviewed de novo. State v. Greene, 332 N.C. 565, 577, 422 S.E.2d 730, 737 (1992).
Before proceeding further, we note the trial court failed to make explicit findings of fact before denying Oliver's motion to suppress. At the conclusion of the hearing, the court's only remarks were that "the officer never ask[ed any] questions. The officer actually left. At one point they leftthey took breaks." Findings of fact and conclusions of law "are required in order that there may be a meaningful appellate review of the decision." State v. Horner, 310 N.C. 274, 279, 311 S.E.2d 281, 285 (1984). In State v. Phillips, our Supreme Court provided the following guidance:
When the competency of evidence is challenged and the trial judge conducts a voir dire to determine admissibility, the general rule is that he should make findings of fact to show the bases of his ruling. If there is a material conflict in the evidence on voir dire, he must do so in order to resolve the conflict. If there is no material conflict in the evidence on voir dire, it is not error to admit the challenged evidence without making specific findings of fact, although it is always the better practice to find all facts upon which the admissibility of the evidence depends. In that event, the necessary findings are implied from the admission of the challenged evidence.
300 N.C. 678, 685, 268 S.E.2d 452, 457 (1980) (citations omitted). In Phillips, the trial court failed to make findings of fact before denying the defendant's motion to dismiss. Id. at 685-86, 268 S.E.2d at 457. The Supreme Court concluded that, because no evidence was presented that contradicted the State's witness, the trial court's omission did *770 not constitute reversible error. See id. at 686, 268 S.E.2d at 457.
In a recent unpublished decision where the trial court failed to make findings of fact, we concluded the "record contain[ed] a material conflict in the evidence such that we [could not] presume facts to support the trial court's ruling." In re J.B., No. COA06-662, 183 N.C.App. 299, 2007 WL 1412457, at *4-5, 2007 N.C.App. LEXIS 1015, at *12 (N.C.Ct. App. May 15, 2007) (unpublished). That case involved testimony both by the interrogating officer and the juvenile. Id. at *4-5, 2007 N.C.App. LEXIS 1015, *11-12. Here, only Deputy Holloway testified, and there was not a material conflict in his testimony. Therefore, we assume the trial court found Deputy Holloway's testimony to be credible and utilized the entirety of the testimony as the factual basis for its decision. Oliver has not argued we should remand for findings of fact, nor has he challenged Deputy Holloway's account of the incident on appeal. Although the trial court should have made specific findings of fact, we decline to remand this case in order for it to do so.

B. The Denial of Oliver's Motion to Suppress
In order to protect the Fifth Amendment right against compelled self-incrimination, suspects, including juveniles, are entitled to the warnings set forth in Miranda v. Arizona prior to police questioning. 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694, 726 (1966). The North Carolina Juvenile Code provides additional protection for juveniles. Juveniles who are "in custody" must be advised of the following before questioning begins:
(1) That the juvenile has a right to remain silent;
(2) That any statement the juvenile does make can be and may be used against the juvenile;
(3) That the juvenile has a right to have a parent, guardian, or custodian present during questioning; and
(4) That the juvenile has a right to consult with an attorney and that one will be appointed for the juvenile if the juvenile is not represented and wants representation.
N.C. Gen.Stat. § 7B-2101(a)(1)-(4) (2009). If a juvenile is younger than fourteen, the Juvenile Code provides additional protection:
When the juvenile is less than 14 years of age, no in-custody admission or confession resulting from interrogation may be admitted into evidence unless the confession or admission was made in the presence of the juvenile's parent, guardian, custodian, or attorney. If an attorney is not present, the parent, guardian, or custodian as well as the juvenile must be advised of the juvenile's rights as set out in subsection (a) of this section; however, a parent, guardian, or custodian may not waive any right on behalf of the juvenile.
N.C. Gen.Stat. § 7B-2101(b) (2009). Previous decisions by our appellate division indicate the general Miranda custodial interrogation framework is applicable to section 7B-2101. See, e.g., In re W.R., 363 N.C. 244, 247, 675 S.E.2d 342, 344 (2009) (applying Miranda case law to section 7B-2101).
Custodial interrogation is "`questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" State v. Buchanan, 353 N.C. 332, 337, 543 S.E.2d 823, 826 (2001) (quoting Miranda, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706). This involves two elements: custody and interrogation. An objective totality of the circumstances test is used to determine whether a suspect has been taken into custody. See Stansbury v. California, 511 U.S. 318, 322-23, 114 S.Ct. 1526, 1528-29, 128 L.Ed.2d 293, 298-99 (1994) (per curiam). "[A]n officer's subjective and undisclosed view" is irrelevant when determining if a suspect was in police custody. Id. at 319, 114 S.Ct. at 1527, 128 L.Ed.2d at 296. Rather, the essential inquiry is "whether a reasonable person in the position of the defendant would believe himself to be in custody or that he had been deprived of his freedom of action in some significant way." Greene, 332 N.C. at 577, 422 S.E.2d at 737. The interrogation element is also determined objectively; it refers to words or conduct the police "should have *771 known are reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 308 (1980).
The Fifth Amendment is concerned solely with governmental coercion, Colorado v. Connelly, 479 U.S. 157, 170, 107 S.Ct. 515, 523-24, 93 L.Ed.2d 473, 486 (1986), but Miranda does not automatically apply to all government actors. Rather, custodial interrogation refers to interrogation conducted by law enforcement. E.g., State v. Thomas, 284 N.C. 212, 216, 200 S.E.2d 3, 7 (1973) (citing Miranda, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706). Statements made to "private individuals unconnected with law enforcement are admissible" if made freely and voluntarily. State v. Etheridge, 319 N.C. 34, 43, 352 S.E.2d 673, 679 (1987) (emphasis added). There are numerous decisions that have found government officials or individuals in "ostensible position[s] of authority" to be unconnected to law enforcement. See, e.g., id. (drawing on numerous cases to support this proposition). For instance, our Supreme Court has held medical personnel did not function as agents of law enforcement "where the accused made incriminating statements on his own initiative, out of the presence of police, and in response to questions not supplied by police." Id. at 44, 352 S.E.2d at 679 (citing State v. Alston, 295 N.C. 629, 633, 247 S.E.2d 898, 900-01 (1978); State v. Cooper, 286 N.C. 549, 566-67, 213 S.E.2d 305, 317 (1975)).
The schoolhouse presents a unique environment for the purpose of applying the custodial interrogation analysis. Our courts have recognized that schoolchildren inherently shed some of their freedom of action when they enter the schoolhouse door. See In re J.D.B., 363 N.C. 664, 669, 686 S.E.2d 135, 138 (2009). Of course, "the need to control the school environment and the school['s] ... position in loco parentis" justifies the enhanced power of school authorities to regulate students' conduct. Craig v. Buncombe Cnty. Bd. of Educ., 80 N.C.App. 683, 686, 343 S.E.2d 222, 224 (1986) (citing Coggins v. Bd. of Educ., 223 N.C. 763, 768-69, 28 S.E.2d 527, 531 (1944)). Therefore, a student is not in custody unless he is subjected to additional restraints beyond those generally imposed during school. In re J.D.B., 363 N.C. at 669, 686 S.E.2d at 138 (citations omitted).
But we cannot forget that police interrogation is inherently coerciveparticularly for young people. See generally John Douard, Note, The Intrinsically Coercive Nature of Police Interrogation, 3 Rutgers Race & L.Rev. 297 (2001); Cara A. Gardner, Recent Development, Failing to Serve and Protect: A Proposal for an Amendment to a Juvenile's Right to a Parent, Guardian, or Custodian during a Police Interrogation After State v. Oglesby, 86 N.C. L.Rev. 1685, 1698-1702 (2008) (drawing on numerous studies to explain why juveniles are uniquely vulnerable to police interrogation). And despite the decreased level of freedom in schools, we cannot ignore the policy objectives behind section 7B-2101, which demand we protect our young people from overreaching law enforcement tactics. Thus, "[t]he [S]tate has a greater duty to protect the rights of a respondent in a juvenile proceeding than in a criminal prosecution." State v. Fincher, 309 N.C. 1, 24, 305 S.E.2d 685, 699 (1983) (Harry Martin, J., concurring in result) (citing In re Meyers, 25 N.C.App. 555, 558, 214 S.E.2d 268, 270 (1975) (stating that in a juvenile proceeding, unlike an ordinary criminal proceeding, the burden upon the State to see that a juvenile's rights are protected is increased rather than decreased)).
There appears to be a split of authority on the question of whether age and experience are relevant to our inquiry. See In re J.D.B., 363 N.C. at 674, 686 S.E.2d at 141 (Brady, J., dissenting) (explaining the conflict created by the In re J.D.B. decision). In In re J.D.B., a school interrogation decision involving a thirteen-year-old, our Supreme Court declined to consider age and academic standing as part of the analysis. Id. at 672, 686 S.E.2d at 140 (majority opinion).[2] But in *772 State v. Smith, a juvenile case involving a sixteen-year-old that was decided outside the context of in-school interrogation, the Supreme Court explicitly indicated it considered "age and experience." 317 N.C. 100, 105, 343 S.E.2d 518, 520 (1986), overruled in part on other grounds by Buchanan, 353 N.C. at 340, 543 S.E.2d at 828. Because In re J.D.B. is the more recent decision and deals with in-school interrogation, we conclude it controls here; thus, we do not account for Oliver's age as part of our custodial interrogation inquiry.
Based on our review of the totality of the circumstances in light of the case law discussed above, we conclude Oliver's statements were made during custodial interrogation. As to whether he was in custody, Oliver was treated in such a way that a reasonable person in his situation would believe he was functionally under arrest. Oliver knew he was suspected of a crime and was interrogated for about six hours, generally in the presence of an armed police officer. He was frisked by that officer and transported in the officer's vehicle to Principal Livengood's office where he remained alone with Deputy Holloway until the principal arrived. Being frisked and transported in a police cruiser is not one of the usual restraints "generally imposed during school"; rather, it is more likely experienced by an arrestee, and a reasonable person is likely to associate it with the experience of being under arrest. There were times when Deputy Holloway left the office, or when Oliver was outside the office when the deputy was not with him, but at no point was there any indication he was free to leave. The deputy remained close by for most of the day. After being accused of drug possession, frisked, transported in a police cruiser, and interrogated nearly continuously from 9:00 a.m. to 3:00 p.m. with a police officer in the room for much of that interrogation, it was objectively reasonable for Oliver to believe he was functionally under arrest.
With respect to the interrogation element, this is a unique situation because Deputy Holloway did not ask any questions. We conclude, however, that under these circumstances, Deputy Holloway's conduct significantly increased the likelihood Oliver would produce an incriminating response to the principal's questioning. His near-constant supervision of Oliver's interrogation and "active listening" could cause a reasonable person to believe Principal Livengood was interrogating him in concert with Deputy Holloway or that the person would endure harsher criminal punishment for failing to answer.
The State makes several arguments in support of its position that Oliver was not subjected to custodial interrogation. We find them unpersuasive. The State first contends the length of the interrogation was due to Oliver changing his story several times. It is unclear how this fact changes the custodial calculus. If a juvenile is interrogated while in custody, conduct that gives law enforcement reason to continue the custodial interrogation does not justify the failure to give the appropriate constitutional or statutory warnings.
The State also argues In re W.R. controls. That decision, however, is clearly distinguishable for two reasons. First, the Supreme Court was engaged in plain error review since the juvenile did not make a motion to *773 suppress or object at trial. In re W.R., 363 N.C. at 247, 675 S.E.2d at 344. Second, review was hindered because of the lack of a suppression hearing; the Court stated that based on the "limited record," it could not conclude the resource officer's conduct rendered the questioning "custodial interrogation." Id. at 248, 675 S.E.2d at 344. In this case, we have the benefit of the transcript of the suppression hearing and are engaged in de novo review.
The State further contends this case presents a similar scenario to In re J.D.B., and therefore, we should reach the same result. There, the juvenile explicitly consented to questioning after being asked to answer questions about recent neighborhood breakins. In re J.D.B., 363 N.C. at 670, 686 S.E.2d at 139. The Court concluded that, by asking the juvenile to answer questions, the investigator indicated to the juvenile he was not required to answer them. Id. Thus, the juvenile was not in custody when he was interrogated. See id. Here, on the other hand, nothing indicates Oliver was given the option of answering questions. At no time was he free to leave, and there is no suggestion anything transpired that would cause him to believe he was free to leave. These facts are critical to the custody inquiry and suggest Oliver incriminated himself under the functional equivalent of arrest. Cf. In re Hodge, 153 N.C.App. 102, 108-09, 568 S.E.2d 878, 882 (2002) (concluding juvenile was not in custody when investigator informed juvenile he would not be arrested and did not have to answer any questions).
The State also argues Deputy Holloway's presence was justified by the need for security. We certainly sympathize with the State's concern for the safety of school personnel; under these facts, however, the State's argument is tenuous. First, the officer had already frisked Oliver for weapons and found none. And second, the officer left the room several times during the interrogation, suggesting safety was not a concern for Deputy Holloway or Principal Livengood. We also note that, if there was a legitimate concern over Oliver possessing a weapon, safety could have been ensured and interrogation could have been legally performed if the officer had given the appropriate warnings and abided by the requirements of section 7B-2101.
Because Oliver made his confession in the course of custodial interrogation without being afforded the warnings required by Miranda and section 7B-2101(a), and because he was not apprised of and afforded his right to have a parent present, we hold Oliver's constitutional and statutory rights were violated. Accordingly, we hold the trial court erred in denying his motion to suppress.
[ ] A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant....
[ ] A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.
N.C. Gen.Stat. § 15A-1443(a)-(b) (2009). Assuming Oliver had not entered the admission, the State could have offered circumstantial evidence against him, and perhaps the testimony of Charlie and Bill. But Oliver's confession that the marijuana was his and that he had marijuana on his person is clearly the strongest evidence against him. We hold the violation of Oliver's statutory rights was prejudicial error and that the State has failed to establish the constitutional violation was harmless.

IV. Conclusion
For the foregoing reasons, we reverse the denial of Oliver's motion to suppress, vacate the trial court's order adjudicating Oliver a delinquent and entering a level 1 disposition, and remand to the trial court for further proceedings.
Reversed, vacated, and remanded.
Judges STEELMAN and STEPHENS concur.
NOTES
[1] Pseudonyms are used to conceal the identities of the juveniles involved in this case.
[2] The In re J.D.B. Court arrived at its conclusion based on Yarborough v. Alvarado, a United States Supreme Court decision reviewing the denial of a writ of habeas corpus. See In re J.D.B., 363 N.C. at 672, 686 S.E.2d at 140 (citing Yarborough v. Alvarado, 541 U.S. 652, 668, 124 S.Ct. 2140, 2151-52, 158 L.Ed.2d 938, 954 (2004)). Yarborough suggests a suspect's age and experience are irrelevant to Miranda's custodial interrogation analysis. See 541 U.S. at 666, 124 S.Ct. at 2150-51, 158 L.Ed.2d at 953-54 (2004). The United States Supreme Court held the failure to take a defendant's age into account when performing this analysis was not an unreasonable application of clearly established law (the test used to rule on an application for a writ of habeas corpus under 28 U.S.C. § 2254(d)(1) (2006)). Yarborough, 541 U.S. at 668, 124 S.Ct. at 2151-52, 158 L.Ed.2d at 954. Considering a suspect's age and experience injects a level of subjectivity that muddies the "clarity" for which the Miranda decision strived, the Court reasoned. See id. at 666-68, 124 S.Ct. at 2150-52, 158 L.Ed.2d at 953-54. In dicta, the Court also stated that under the non-deferential de novo standard of review, it would have found consideration of age and experience improper. Id. at 668-69, 124 S.Ct. at 2151-52, 158 L.Ed.2d at 954. In In re J.D.B., our Supreme Court noted it was not bound by Yarborough because it was a habeas corpus decision, but nevertheless considered it persuasive. 363 N.C. at 672 n. 1, 686 S.E.2d at 140 n. 1. Compare State v. Smith, 317 N.C. 100, 106, 343 S.E.2d 518, 521 (1986) (stating Fifth and Sixth Amendment case law did not control decisions related to section 7A-595, which was recodified as section 7B-2101).