STEPHENS, Judge.
I. Factual Background and Procedural History
On 17 December 2012, Western Alamance High School Assistant Principal David Nebrig received an anonymous tip that a hand-to-hand drug transaction had occurred during lunch in a student bathroom. Together with Principal Todd Stephans, Assistant Principal Nebrig investigated this tip by interviewing a student named Chad, who explained that he and several other students had been in the bathroom during lunch when a student named Richard approached them and displayed a small tin container that was half filled with marijuana.[1] Based on this information, Principal Stephans decided to speak with Richard, whom he subsequently escorted to the front office with assistance from School Resource Officer ("SRO") Josh Hayes of the Alamance County Sheriff's Office.
Upon reaching the front office, Principal Stephans led Richard to a separate, unoccupied office that measured between 8 by 10 and 10 by 13 feet in area. Inside, Assistant Principal Nebrig sat behind a desk while Principal Stephans and SRO Hayes stood off to his side and Richard sat in a chair beside the door, which was closed but not locked. SRO Hayes entered and exited the room several times during the ensuing 10- to 25-minute interview of Richard. Principal Stephans and Assistant Principal Nebrig took the lead in questioning Richard about what had happened in the bathroom during lunch. Although Richard initially denied any wrongdoing, he quickly admitted to possessing marijuana, then reached into his backpack and handed over a tin containing marijuana and nine dollars that he said he received from two of his classmates for selling marijuana to them in five-dollar increments. SRO Hayes took possession of both the money and the marijuana, which he weighed at approximately 1.7 grams and then locked in his vehicle until he could enter it into evidence at the Sheriff's Office. At the end of the questioning, Richard was allowed to call his stepfather and was subsequently suspended from school.
On 10 January 2013, SRO Hayes filed juvenile petitions in Alamance County District Court against Richard for one count of possessing a controlled substance with intent to sell or deliver, namely 1.7 grams of marijuana, and one count of selling or delivering a controlled substance. On 3 May 2013, the State dismissed the petition for selling or delivering a controlled substance, and an adjudication hearing was conducted on the remaining charge during the 11 July 2013 session of Alamance County District Court.
At the outset of the hearing, Chad testified that on 17 December 2012, Richard approached him in the bathroom during lunch and showed him a small tin container containing a substance that Chad recognized by sight and smell as marijuana. Toward the end of Chad's testimony, during a break in the proceeding, the district court judge paused to inform Richard of his rights under section 7B-2405 of our General Statutes to confront and cross-examine witnesses as well as his privilege against self-incrimination. Richard responded that he understood his rights, and the hearing continued.
Shortly thereafter, Richard's counsel argued that Richard's 17 December 2012 statement was the product of a custodial interrogation and should therefore be suppressed due to the fact Richard was never given Mirandawarnings. In order to evaluate this argument, the court received voir diretestimony from Principal Stephans, Assistant Principal Nebrig, SRO Hayes, and Richard himself.
Principal Stephans acknowledged that Richard was never informed that he had the right to remain silent, but also testified that Richard was never handcuffed or otherwise physically restrained and the door to the office was never locked. While he admitted that Richard would have been subject to discipline if he had refused to accompany him to the office or declined to answer questions there based on the school's student handbook, Principal Stephans testified that none of the adults present threatened Richard with any adverse consequences that might ensue if he refused to cooperate, that the tone of the questioning was calm and conversational, and that he and Assistant Principal Nebrig did not have to do much prying with their questions because Richard was very honest and forthcoming. According to Principal Stephans, although the school is required to report drug-related offenses to the police and SRO Hayes is routinely asked to observe related questioning, nearly all the questions Richard was asked on 17 December 2012 came from school administrators and focused on "gather[ing] information" about potential violations of school rules, rather than "worry[ing] about what criminal act occurred, and whether law enforcement need[ed] to be involved quite yet."
Assistant Principal Nebrig's voir diretestimony largely corroborated that of Principal Stephans. Specifically, he testified that he and Principal Stephans took the lead in questioning Richard and only looked to SRO Hayes for clarification, and that although he remembered SRO Hayes asking at least one question, SRO Hayes did not tell either him or Principal Stephans what questions to ask.
SRO Hayes testified on voir direthat he helped escort Richard to the office by following at a distance of 15-20 feet behind him as he walked there, but that he never restrained Richard in any way. SRO Hayes testified further that although he was present while Principal Stephans and Assistant Principal Nebrig questioned Richard, he "let[ ] them run their school investigation" and the only question he asked during the interview came toward the end, when Richard asked him whether he was going to jail. After replying in the negative, SRO Hayes inquired how many more transactions Richard could have made with the amount of marijuana that was left in the tin, to which Richard answered "three."
Richard testified during the voir direhearing that he was almost 15 and a half years old on 17 December 2012, that he went to the office voluntarily after he heard his name called on the school's intercom, and that SRO Hayes followed him to the office at a distance of approximately 20 feet. When Richard reached the office, Principal Stephans was standing in the hallway and told him to go inside. Richard did so and sat down. Principal Stephans then entered followed by Assistant Principal Nebrig who was holding Richard's book bag. SRO Hayes entered last. Richard testified that:
Then they, then Mr. Nebrig asked (inaudible) me [a] question, what happened in the bathroom today? And I was like, I don't know what you're talking about. And then Mr. Nebrig was like [Richard] you have good character, we're not dumb, you're not dumb, just be honest and tell us what happened. That's when I pulled out-that's when (inaudible) my book bag was right there on the desk, [so I] pulled out the can of marijuana and lay it on the desk.
Richard later explained that his decision to admit to possessing and selling the marijuana was motivated by "just like honesty, like, the truth will set you free, so I was just like confessed and told them, like, pulled out the marijuana tin and (inaudible) there it is." Richard testified further that he did not feel free to leave the office, but admitted on cross-examination that he was never told that he could not leave or physically prevented from doing so, and that although he did not know whether the door was locked, he believed he could have walked out if he had wanted to. Richard estimated that he was in the office for a total of 25 minutes at most, but that he confessed "within the first five to ten minutes," and confirmed that SRO Hayes did not ask him any questions until the end.
At the close of the voir direhearing, the district court made extensive factual findings based on each witness's testimony and ultimately concluded that Richard "was not in custody at the time of the questioning by the Principal, Assistant Principal, and finally by [SRO] Hayes in the office on December 17th, 2012." Consequently, the court denied Richard's motion to suppress his inculpatory statement. The court then received direct testimony from Principal Stephans, who testified that he was able to tell that the substance in the tin Richard handed over to him in the office was marijuana "[j]ust by sight, having seen it before." He also identified the substance based on Richard's confession that he had packaged a portion of the tin's contents into two plastic bags that he sold for five dollars apiece. Similarly, SRO Hayes testified that he observed a "loosely packed quantity of what appeared to me to be marijuana" inside the tin he confiscated from Richard. When the State subsequently sought to admit the tin into evidence as State's Exhibit 1, SRO Hayes identified it as the same tin he had seized from Richard on 17 December 2012. When the prosecutor asked him to open the tin and state whether, "based on [his] training and experience," Officer Hayes believed the substance inside to be marijuana, he replied, "That's correct." Richard's attorney did not object when the tin containing the marijuana was admitted into evidence, or when the State subsequently admitted and published State's Exhibit 2, which SRO Hayes identified as "the currency envelope that [he] placed the nine dollars [that he confiscated from Richard] into on December 17, 2012."
At the conclusion of the hearing, the district court adjudicated Richard delinquent on the charge of possessing marijuana with intent to sell and deliver, and sentenced him to 12 months of probation, subject to various supplemental conditions. Richard gave notice of appeal in open court.
II. Analysis
A. Lay opinion testimony identifying marijuana
Richard first argues that the district court committed plain error by allowing lay opinion testimony that the substance contained in State's Exhibit 1 was marijuana. We disagree.
As a general matter, this Court reviews the admissibility of lay opinion testimony for an abuse of discretion. See, e.g., State v. Collins,216 N.C.App. 249, 254, 716 S.E.2d 255, 259 (2011). Nevertheless, as our prior decisions demonstrate,
[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion. Therefore, where a party does not object at trial, plain error is the proper standard of review. Plain error is so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached. Plain error exists only in exceptional cases where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.
Id.at 254-55, 716 S.E.2d at 259-60 (citations, internal quotation marks, and emphasis omitted). Here, because Richard did not object at trial when State's Exhibit 1 was admitted into evidence, the standard of review is plain error.
Richard contends that it was plain error for the district court to admit lay opinion testimony from Chad, Principal Stephans, and SRO Hayes that the substance contained in State's Exhibit 1 was marijuana when the State made no showing that any of these witnesses had any personal knowledge, experience, education, or training in marijuana identification. Although Richard concedes that non-expert testimony from a police officer or other person as to a visual identification of marijuana is admissible under Rule 701 of the North Carolina Rules of Evidence so long as the lay witness has a basis of personal knowledge for his opinion, Richard contends that neither Chad, nor Principal Stephans, nor SRO Hayes offered sufficient testimony as to their experience in identifying marijuana to satisfy Rule 701. Thus, Richard insists that the State failed to present substantial evidence that he possessed marijuana, and that the district court therefore plainly erred in adjudicating him delinquent.
Rule 701 permits testimony "in the form of opinions and inferences" from a witness who is not testifying as an expert if that testimony is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen.Stat. § 8C-1, Rule 701 (2013). This Court has long recognized that evidence proffered through lay opinion testimony under Rule 701 is admissible "[a]s long as the lay witness has a basis of personal knowledge for his opinion[.]" State v. Bunch,104 N.C.App. 106, 110, 408 S.E.2d 191, 194 (1991). A foundation for personal knowledge may "be furnished by the testimony of the witness himself." State v.. Harshaw,138 N.C.App. 657, 661, 532 S.E.2d 224, 227 (citation omitted), disc. review denied,352 N.C. 95, 544 S.E.2d 793 (2000). Personal knowledge "is not an absolute but may consist of what the witness thinks he knows from personal perception." State v. Wright,151 N.C.App. 493, 495, 566 S.E.2d 151, 153 (2002) (citation omitted).
In the present case, both Chad and Principal Stephans testified that the substance they saw in Richard's tin on 17 December 2012 was marijuana based on their prior knowledge and personal perceptions. Chad testified that he was already familiar with what marijuana looks and smells like, and that the substance Richard showed him in the bathroom looked and smelled like marijuana. In addition, Principal Stephans testified that the substance in the tin Richard handed over inside the office was marijuana based on "having seen [marijuana] before." Moreover, SRO Hayes identified the substance as marijuana based on his training and experience, and "our case law provides that an officer may testify that the contraband seized was marijuana based on visual inspection alone." State v. Jones,216 N.C.App. 519, 526, 718 S.E.2d 415, 421 (2011) (citations omitted), disc. review denied,366 N.C. 229, 726 S.E.2d 856 (2012).
On this record, we find it difficult to discern how the trial court erred, let alone committed plain error, in allowing lay opinion testimony from Chad, Principal Stephans, and SRO Hayes that the substance contained in State's Exhibit 1 was marijuana. This argument is without merit and is overruled.
B. Compliance with section 7B-2405
Richard argues next that the district court violated the statutory procedure for conducting a juvenile adjudicatory hearing by failing to fully advise him of his privilege against self-incrimination under section 7B-2405 of our General Statutes before he made inculpatory statements during his voir diretestimony. We disagree.
"Our courts have consistently recognized that the State has a greater duty to protect the rights of a respondent in a juvenile proceeding than in a criminal prosecution." In re J.R.V.,212 N.C.App. 205, 207, 710 S.E.2d 411, 412 (2011) (citation omitted), disc. review improvidently allowed,365 N.C. 416, 720 S.E.2d 387 (2012). "The General Assembly has also taken affirmative steps to ensure that a juvenile's rights are protected during a delinquency adjudication," id.,such as enacting section 7B-2405 of our General Statutes. To assure due process of law during a juvenile adjudicatory hearing, section 7B-2405 provides that the court "shall protect the following rights of the juvenile ...:
(1) The right to written notice of the facts alleged in the petition;
(2) The right to counsel;
(3) The right to confront and cross-examine witnesses;
(4) The privilege against self-incrimination;
(5) The right of discovery; and
(6) All rights afforded adult offenders except the right to bail, the right of self-representation, and the right of trial by jury.
N.C. Gen.Stat. § 7B-2405 (2013). Our prior decision in J.R.V.made clear that "by stating that the trial court shall protect a juvenile's delineated rights, [the statute] places an affirmative duty on the trial court to protect, inter alia,a juvenile's right against self-incrimination." 212 N.C.App. at 208, 710 S.E.2d at 413 (internal quotation marks omitted). Thus, although section 7B-2405
does not provide the explicit steps a trial court must follow when advising a juvenile of his rights, the statute requires, at the very least, somecolloquy between the trial court and the juvenile to ensure that the juvenile understands his right against self-incrimination before choosing to testify at his adjudication hearing.
Id.at 208-09, 710 S.E.2d at 413 (emphasis in original). In J.R.V.,we held that the trial court erred because the record revealed "there was absolutely no colloquy between the juvenile and the trial court." Id.at 209, 710 S.E.2d at 413.
Here, by contrast, the transcript of the adjudicatory hearing shows that shortly after the hearing commenced, before any witnesses were called to offer voir diretestimony, the court and Richard engaged in an extensive colloquy, during which the court informed Richard of both his privilege against self-incrimination and his right to confront and cross-examine witnesses. When asked specifically whether he understood these rights, Richard answered that he did. This colloquy clearly satisfied the minimum requirements imposed by section 7B-2405. However, Richard now argues that the court should have advised him of his privilege against self-incrimination againbefore he took the stand to offer voir diretestimony later in the hearing. Richard cites no North Carolina authority to support the proposition that section 7B-2405 requires a district court to repeatedly remind a juvenile of his privilege against self-incrimination once he has already been properly advised thereof and stated that he understands that right. This argument is without merit and is overruled.
C. Custodial interrogation
Finally, Richard argues that the district court erred in denying his motion to suppress his 17 December 2012 statement to Principal Stephans, Assistant Principal Nebrig, and SRO Hayes. Specifically, Richard contends that the district court erred in its determination that he was not in custody, and therefore was not entitled to Mirandawarnings. We disagree.
Our review of a court's order on a motion to suppress "is strictly limited to a determination of whether its findings are supported by competent evidence, and in turn, whether the findings support the [district] court's ultimate conclusion." In re K.D.L .,207 N.C.App. 453, 456, 700 S.E.2d 766, 769 (2010). "Legal conclusions, including the question of whether a person has been interrogated while in police custody, are reviewed de novo." Id.
In Miranda v. Arizona,the United States Supreme Court held that, under the Fifth Amendment, individuals subjected to custodial interrogation must first be informed that they have "a right to remain silent, that any statement [they do] make may be used as evidence against [them], and that [they have] a right to the presence of an attorney, either retained or appointed." 384 U.S. 436, 444, 16 L.Ed.2d 694, 706-07 (1966). The Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.at 444, 16 L.Ed.2d at 706.
In determining if a suspect is "in custody" for Mirandapurposes, this Court applies an objective test to evaluate "whether, considering all the circumstances, a reasonable person would not have thought that he was free to leave because he had been formally arrested or had had his freedom of movement restrained to the degree associated with a formal arrest." In re A.N.C., Jr.,--- N.C.App. ----, ----, 750 S.E.2d 835, 839 (citation omitted), disc. review denied,367 N.C. 269, 752 S.E.2d 151 (2013). When such custodial determinations involve a suspect who is a juvenile, "a reviewing court must take [the] juvenile's age into account so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer." Id.(quoting J.D.B. v. North Carolina,--- U.S. ----, ----, 180 L.Ed.2d 310, 326 (2011) ). The North Carolina Juvenile Code requires that before questioning begins, any juvenile who is "in custody" must be advised that he has a right to remain silent, that any statement he gives can be used against him, that he has a right to have a parent, guardian, or custodian present during questioning, and that he has the right to consult with an attorney. SeeN.C. Gen.Stat. § 7B-2101(a) (2013).
However, because "[t]he Fifth Amendment is concerned solely with governmental coercion,"Mirandais not without its limitations. K.D.L.,207 N.C.App. at 458, 700 S.E.2d at 771 (citation omitted). Indeed, as this Court has observed, "[t]he protections of Mirandaand section 7B-2101(a) apply only to custodial interrogations by law enforcement." In re D.L.D.,203 N.C.App. 434, 442, 694 S.E.2d 395, 402 (2010) (citation omitted). Thus, "free and voluntary statements made without Mirandawarnings to private individuals unconnected with law enforcement are admissible at trial." In re Phillips,128 N.C.App. 732, 735, 497 S.E.2d 292, 294, disc. review denied,348 N.C. 283, 501 S.E.2d 919 (1998) (finding no custodial interrogation where a high school assistant principal "did not question the juvenile to obtain information to use in criminal proceedings but questioned her simply for school disciplinary purposes"). Moreover,
[t]he schoolhouse presents a unique environment for the purpose of applying the custodial interrogation analysis. Our courts have recognized that schoolchildren inherently shed some of their freedom of action when they enter the schoolhouse door. Of course, the need to control the school environment and the school's position in loco parentisjustifies the enhanced power of school authorities to regulate students' conduct. Therefore, a student is not in custody unless he is subjected to additional restraints beyond those generally imposed during school.
K.D.L.,207 N.C.App. at 459, 700 S.E.2d at 771 (citations, internal quotation marks, brackets, and ellipsis omitted).
In the present case, Richard offers several related arguments as to why he believes that the district court erred in its determination that he was not in custody on 17 December 2012, but we do not find any of them persuasive. On the one hand, Richard contends that a reasonable 15-year-old in his position would not have felt free to leave the office because he was never told he was free to leave, the door was shut, and the school's student handbook provided that he would be subject to discipline if he did not stay in the room and answer questions. However, this argument fails because it ignores the fact that "schoolchildren inherently shed some of their freedom of action when they enter the schoolhouse door," which means that "a student is not in custody unless he is subjected to additional restraints beyond those generally imposed during school." See id.The record here indicates that Richard was not physically restrained in any way before or during the questioning. Moreover, Richard cites no evidence or authority that would suggest the rules and restrictions contained in the school's student handbook are not "generally imposed during school," which means that his compliance with them during the questioning cannot be considered the sort of "additional restraint" that would be sufficient to support a determination that he was in custody. Further, as we recognized in A.N.C., Jr.,"the fact that a defendant is not free to leave does not necessarily constitute custody for purposes of Miranda." --- N . C.App. at ----, 750 S.E.2d at 839 (citation omitted).
On the other hand, Richard argues that he was in custody because the school administrators who questioned him acted in concert with SRO Hayes in anticipation of filing criminal charges against him. In support of this argument, Richard cites our prior decision in K.D.L.In that case, we held that the district court erred in denying a juvenile defendant's motion to suppress based on our conclusion that he was subjected to custodial interrogation, and thus should have been given Mirandawarnings, after he was transported across his school's campus in a police patrol car, patted down by the school resource officer, and then questioned by the principal for five or six hours while the officer remained present. 207 N.C.App. at 461, 700 S.E.2d at 772 ("Being frisked and transported in a police cruiser is not one of the usual restraints generally imposed during school; rather, it is more likely experienced by an arrestee, and a reasonable person is likely to associate it with the experience of being under arrest.") (internal quotation marks omitted). Although the officer in K.D.L .did not ask any questions, we concluded that his conduct
significantly increased the likelihood [the defendant] would produce an incriminating response to the principal's questioning. His near-constant supervision of [the defendant's] interrogation and active listening could cause a reasonable person to believe [the principal] was interrogating him in concert with [the officer] or that the person would endure harsher criminal punishment for failing to answer.
Id.(internal quotation marks and emphasis omitted). Given the totality of the circumstances, we reversed the denial of the juvenile defendant's motion to suppress and vacated the order adjudicating him delinquent.
Richard argues that our decision in K.D.L.should control the outcome here, but we find its holding inapposite to the present facts. Significantly, K.D.L.did not disturb our Supreme Court's prior holding that the presence of a school resource officer at the request of administrators does not automatically render the questioning of a juvenile a custodial interrogation. See, e.g., In re W.R.,363 N.C. 244, 675 S.E.2d 342 (2009). Here, as noted supra,SRO Hayes did not frisk or deploy any similar degree of physical restraint against Richard, and the questioning he was subjected to amounted to a fraction of the duration of the questioning of K.D.L.Although Richard emphasizes voir diretestimony from Principal Stephans about how school administrators are required to report drug offenses to the police and consequently SRO Hayes routinely assists in related investigations including questioning sessions, the record here clearly demonstrates that SRO Hayes was minimally involved in questioning Richard while Principal Stephans and Assistant Principal Nebrig took charge and focused on potential violations of school rules rather than collecting evidence for a criminal prosecution. We therefore conclude that the district court did not err in determining that Richard was not in custody for Mirandapurposes or in denying his motion to suppress.
NO ERROR.
Judges HUNTER, JR., and TYSON concur.
Report per Rule 30(e).
Opinion
Appeal by Defendant from orders entered 11 July 2013 by Judge Kathryn W. Overby in Alamance County District Court. Heard in the Court of Appeals 18 March 2015.

For the purpose of protecting their privacy, in accordance with Rule 3.1 of our Rules of Appellate Procedure, we refer to the juveniles by pseudonyms throughout this opinion.